UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAWN M. GREELEY,

Plaintiff,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

Defendant.

C.A. No. 04-10772-DPW

## PLAINTIFF'S MOTION FOR PROCEDURAL ORDER
## OR, IN THE ALTERNATIVE, FOR LEAVE TO CONDUCT DISCOVERY

Plaintiff, Dawn M. Greeley ("Greeley" or "Plaintiff"), hereby requests that this Court order Defendant, The Prudential Insurance Company of America ("Prudential" or "Defendant"), to identify, with specificity, the documents and information upon which it relied when it made the initial decision to terminate her benefits, and the documents and information upon which it relied when it denied each of Plaintiff's three (3) internal administrative appeals. Alternatively, Plaintiff requests that the Court permit her to depose the author of each of Prudential's written decisions terminating Plaintiff's coverage and affirming that decision at each level of her administrative appeals, namely: (1) Jennifer Nichols (Initial Termination); (2) Michelle Ignotis (First Appeal Denial); (3) Christine Latore (Second Appeal Denial); and (4) Dan

Dougherty (Third Appeal Denial).[1]  As set forth below, the Plaintiff has demonstrated good cause why an order requiring the Defendant to denote which information it relied upon at each stage of the administrative proceedings which preceded this matter should be permitted.[2]

1.  The Plaintiff suffers from a physical condition known as fibromyalgia, a chronic pain disorder causing, among other things, widespread tenderness in the muscles and soft tissues. See, e.g., Report of Bernard S. Yudowitz, M.D. (diagnosing Plaintiff as suffering from fibromyalgia), a copy of which was produced with Plaintiff's Proposed Administrative Record (PL 308-310), and is also attached hereto as Exhibit 1.  See also Giannone v. Metropolitan Life Insurance Co., 311 F. Supp. 2d. 168, 177 n. 6 (D. Mass. 2004) (acknowledging clinical acceptance of fibromyalgia and describing it as "a chemical imbalance causing nerve cells in the spinal cord and brain to become oversensitized . . . lowering a patient's threshold for pain).

2.  The Plaintiff first began experiencing symptoms in approximately 1986/87, when pain in the musculature of her jaw on the right hand side continued to increase in intensity for a two year period, resulting in temporomandibular joint ("TMJ") syndrome. Ex. 1.  Despite a variety of treatments and surgery, the Plaintiff's condition continued unabated.  On or about April 9, 1989, after seventeen years of service, the Plaintiff discontinued working at Digital Equipment Corporation ("Digital") where she served as Manufacturing Strategic Resources Manager, due to her total disability.  Id.

---

[1] By letter dated October 25, 2001 ("First Appeal"), the Plaintiff appealed Prudential's December 21, 2000 termination of benefits ("Initial Termination"), which Prudential rejected by letter dated January 14, 2002 ("First Appeal Denial").  Plaintiff appealed this decision by letter dated March 29, 2002 ("Second Appeal"), which Prudential denied by letter dated March 24, 2003 ("Second Appeal Denial").  The Plaintiff appealed this decision by letter dated July 10, 2003 ("Third Appeal"), which Prudential denied by letter dated January 9, 2004 ("Third Appeal Denial").

[2] This Court's Order dated June 24, 2004 provided, in part, that requests for modification of the scheduling order shall be made by motion, and shall be granted upon a showing of "good cause."

3.  By letter dated December 21, 2000, Prudential notified the Plaintiff of its decision to terminate her long term disability benefits. Pursuant to Prudential's internal procedures, the Plaintiff appealed the termination of her benefits internally on three occasions, presumably at a higher level of review each time. Prudential rejected each of her appeals, thereby, exhausting Prudential's internal appeals process. Prudential has submitted an administrative record in this case which fails in any way to denote what documents it considered at each level of this nearly four (4) year process. Determining which records Prudential reviewed and relied upon at each stage is significant, if not determinative because it will show, Plaintiff submits, that Prudential's reasons shifted like sand at each stage and that at each level it supplemented the record by adding to the record material not disclosed to the Plaintiff. In that regard, it is instructive that the administrative record Prudential has submitted in this case contains hundreds of pages never before produced to the Plaintiff. Prudential's actions in this matter, Plaintiff submits, were arbitrary and capricious. Defendant's shifting sands approach, hiding from Plaintiff supplemental materials it considered and its changing rationales[3] all suggest that it should be required to indicate which records it relied upon at each stage of the administrative process. Moreover, as noted, this process is nearly four (4) years old. Even assuming that Prudential can show that its actions at the end of the administrative process were justified, which it cannot, Plaintiff should be entitled to benefits she should have received until Prudential reached a rational decision.

---

[3] For example, Defendant based its initial denial of benefits (December 21, 2000) on its conclusion that Plaintiff's job at Digital was sedentary, and that her physical condition did not preclude her from returning to work. In denying her first appeal (January 14, 2002), Defendant reversed itself and stated "in our initial decision, we indicated that [Plaintiff's] occupation was sedentary in nature. Upon reviewing the additional information submitted with your appeal, we have determined that Ms. Greeley's occupation was not sedentary in nature." In denying Plaintiff's second appeal (March 24, 2003), Defendant asserted that Plaintiff was not precluded from performing sedentary work (even though her employment at Digital was not sedentary) and further opined that her condition was psychological, not physical.

4.      On August 11, 2004, Prudential submitted its proposed administrative record to this Court, which submission contained almost 800 pages of information, much of which had never been disclosed to the Plaintiff, despite her requests for same.[4]  Among other things, Prudential's proposed administrative record includes its own "SOAP" notes – revealing the internal analyses of Prudential's claim handlers, as well as medical articles and studies upon which Prudential apparently relied.[5]

5.      Plaintiff has asked Prudential to identify which of the more than 800 pages of documents it relied upon when reaching its initial decision to terminate her benefits, and which documents it relied upon at each stage of its internal appeal process.  Prudential, however, has refused to do so, responding that it relied upon all information available to it at the time each decision was made.  Prudential's refusal to identify that upon which it relied is but another manifestation of a pattern of hiding the ball from the Plaintiff, and obfuscating the real bases for its decisions.  Such information is necessary in order for Plaintiff to demonstrate to this Court, the arbitrary and capricious nature of Prudential's termination of benefits.[6]  Moreover, by determining the true basis for Prudential's decision(s), the Plaintiff can preclude Prudential from presenting to this Court a post hoc rationale for its termination of benefits.  See Doyle v. Nationwide Insurance Cos., 240 F. Supp. 2d 328, 347 (E.D. Pa. 2003) ("permitting an

---

[4] Prudential submitted one set of documents numbered DG 001 through DG 0588, and another set of documents (approximately 200 additional pages) bate stamped in similar fashion but with the suffix "a" (e.g., DG 268a- DG 533a).

[5] A "SOAP" note appears to be a Prudential internal memorandum with sections labeled "Subjective," "Objective," "Analysis," and "Plan."

[6] In the instant case, where Prudential both made the decision to terminate the benefits, and is also the party who would have had to fund the benefits had they continued, this Court may apply an even more stringent standard of review by considering such "conflict" as a factor in the ERISA review process.  Conrad v. Reliance Standard Life Ass. Co., 292 F. Supp. 2d 233, 237 (D. Mass. 2003).

- 5 -

administrator's post hoc rationale to prevail when a claimant seeks review in federal court would undercut ERISA's [29 U.S.C. § 1133(1)] requirements that administrator's provide "specific reasons" from the outset when denying a claim for benefits").

6. Should this Court decline to order Prudential to segregate which documents were part of the administrative record at each stage below, Plaintiff requests that it be allowed thirty (30) days from the date of this Court's Order to conduct discovery from the four (4) individuals referenced above to inquire of them as to which documents they considered at each stage of the administrative process below. If this motion is allowed, Plaintiff requests an extension of the summary judgment deadlines accordingly, as set forth in the proposed Order attached hereto.[7]

WHEREFORE, the Plaintiff requests that this Court order Prudential to identify, with specificity, the documents and other information upon which it relied when it made the initial decision to terminate her benefits, and the documents and other information upon which it relied when it denied each of Plaintiff's internal administrative appeals. Alternatively, Plaintiff requests permission to depose the author of each of Prudential's written decisions, i.e., its initial decision terminating coverage and its subsequent decisions denying Plaintiff's administrative appeals: (1) Jennifer Nichols (Initial Termination); (2) Michelle Ignotis (First Appeal Denial); (3) Christine Latore (Second Appeal Denial); and (4) Dan Dougherty (Third Appeal Denial). A proposed form of Order is attached hereto as Exhibit 2.

---

[7] Prudential has represented to Plaintiff that should this Court allow the instant motion, it will seek thirty (30) days to respond to the discovery and a concurrent extension of the summary judgment deadlines.

        Respectfully submitted,

        DAWN M. GREELEY,

        By her attorneys,

        */s/ Jeffrey A. Dretler*
        _____
        Richard D. Glovsky, BBO# 195820
        Jeffrey A. Dretler, BBO# 558953
        PRINCE, LOBEL, GLOVSKY & TYE LLP
        585 Commercial Street
        Boston, MA  02109
        (617) 456-8000

Dated:  September 8,, 2004

## LOCAL RULE 7.1 CERTIFICATION

    I, Jeffrey A. Dretler, attorney for the Plaintiff in the above-referenced matter, hereby certify that I have conferred with counsel for Defendant in a good faith attempt to resolve or narrow the issues presented herein.

        */s/ Jeffrey A. Dretler*
        _____
        Jeffrey A. Dretler