UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAWN M. GREELEY,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant | CIVIL ACTION NO.<br><br>04-10772 DPW |

**DEFENDANT'S, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND LOCAL RULE 56.1 STATEMENT OF UNDISUPTED FACTS**

Pursuant to L.R. 56.1 of the United States District Court for the District of Massachusetts, The Prudential Insurance Company of America (hereinafter referred to as "Prudential"), submits this statement of material facts as to which Prudential contends there is no genuine issue necessary to be litigated.

STATEMENT OF UNDISPUTED FACTS

The following is Prudential's L.R. 56.1 concise statement of all undisputed material facts:

The Parties and The Plan

1. The Plan was established and was maintained by Greeley's former employer, Digital. DG 0001-0019. See ¶ 2 of the affidavit of Edith Ewing attached hereto (hereinafter referred to as "Ewing Aff.__").

2. Greeley asserts that the Plan is governed by ERISA, which Prudential does not contest. See Plaintiff's Complaint and Defendant's Answer.

1

3. Digital contracted with Prudential to provide its employees with a long-term disability plan as part of its employee benefits program. DG 0020-0045. Ewing Aff. ¶ 3.

4. The Group Contract, GD-19100 and the Plan contain the terms and conditions of the administration of the LTD Plan. DG 0020-0045, Ewing Aff. ¶ 3, See ¶ 4 of the affidavit of Laura Hannan attached hereto (hereinafter referred to as "Hannan Aff.__").

5. Prudential underwrites the Plan's long-term disability benefits and it serves as the administrator of the Plan with regard to claims for long-term disability benefits. DG 0020-0045, Hannan Aff. ¶ 4,5.

6. Prudential has full discretionary authority to control and manage all claims relating to the Plan. Hannan Aff. ¶5.

7. Prudential has the exclusive right to interpret and administer the provisions of the Plan. Hannan Aff. ¶ 5.

8. Prudential is the Administrator and a Fiduciary of the Plan. Answer ¶ 6.

9. Pursuant to the terms of the Plan with regard to claims for total disability benefits, the Plan's Booklet-Certificate provides as follows: "Total Disability" exists <u>when Prudential determines</u> that all of these conditions are met:

(1) Due to sickness or accidental injury, both of these are true:
   (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
   (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration if shown in the Schedule of Benefits.
(2) You are not working for any job or profit.

2

31101.1

 (3) You are under the regular care of a Doctor. (emphasis added)(See Group Plan 19100, DG 0010). Ewing Aff. ¶ 4. Hannan Aff. ¶ 6.

10. Greeley began her employment with Digital in 1971 as a Sales Analyst working out of its Sales and Service Headquarters. Compl. ¶ 7. Hannan Aff. ¶ 8.

11. Greeley was a Plan participant pursuant to her employment with Digital. Answer ¶ 17.

Plaintiff's Claim for LTD Benefits

12. Prudential began paying Plaintiff long term disability benefits on or about October 7, 1989. Answer ¶ 17, Hannan Aff. ¶ 12.

13. On or about December of 2000, after more than ten years of benefits being paid, Prudential determined, based on the medical records, that Plaintiff no longer met the criteria of total disability as defined by the Plan. DG 0225- DG0229. Hannan Aff. ¶ 14.

14. Prudential informed Plaintiff that she would no longer receive benefit payments. DG 0225- DG0229. Hannan Aff. ¶ 14.

15. As a measure of assistance, Prudential extended benefits through March 31, 2001. DG 0225- DG0229.

16. As part of its decision to discontinue benefits, Prudential had Plaintiff's medical records reviewed by an independent physician and an independent psychiatrist during the decision making process. DG 0220- DG 0222, DG 0129- DG 0130.

17. Also, Prudential had arranged for the Plaintiff's examination by various independent medical doctors and psychiatrists in the years prior to the decision to terminate benefits. DG 0143- DG 0145, DG 0111- DG 0116, DG 0107- DG 0110.

31101.1

18. Further, Prudential arranged for a vocational consultant to perform a vocational assessment. DG 0133- DG 0136.

19. In its decision, Prudential noted that two independent physicians who examined Greeley noted no physical findings to support her inability to work. DG 0226-227.

20. Dr. Pick opined that orthopedically, he was unable to establish or substantiate a condition that precluded Greeley from engaging in her activities as a manufacturing manager. DG 0110.

21. Dr. Pick also opined that he was unable to objectively substantiate an orthopedic condition or entity. DG 0110.

22. Dr. Pick noted he had reviewed multiple physical therapy documents, records from Gateway Health Care Associates (Matilde Flores, Acupuncturist) and other administrative documents, including a job description for a manufacturing manager. DG 0110.

23. Dr. Donelson, an independent physician, noted that Greeley spent 3-4 hours on a home exercise program daily. DG 0113.

24. The program consisted of stretches, Nordic Track, use of a massage chair, and heat application. DG 0113.

25. Also, Dr. Donelson noted that Greeley used light weights for strengthening as well. DG 0113.

26. Dr. Donelson noted that he believed that Greeley had significant non-organic/behavioral issues that were dominating her perception of symptoms and disability. DG 0115.

31101.1

27. Like Dr. Pick, Dr. Donelson was unable to identify any objective findings that would support the degree of symptoms and disability that Greeley claimed. DG 0116.

28. Dr. Donelson opined that Greeley had significant psychological dependency upon her elaborate treatment structure that she has built around her with these numerous clinicians. DG 0116.

29. Prudential also noted that Dr. Lipsitt, a psychiatrist who examined Greeley, opined that Greeley was strongly attached to her chronic pain and to her disability payments and had little motivation to pursue possible psychological stressors to help explain the onset of her symptoms. DG 0227, DG 0145.

30. Prudential further noted that surveillance indicated that Greeley was active within her community. DG 0227.

31. Also, Prudential noted that Dr. Gwen Brachman performed a complete review of the medical records, the surveillance reports and the IME reports and opined that Greeley's symptoms did not appear to cause an impairment that would prohibit Greeley from physically performing the essential functions of her sedentary occupation. DG 0228.

32. Dr. Smith, a psychiatrist who performed a records review, opined that in all probability there was a substantial psychiatric disorder. DG 0129- DG 0130.

33. Dr. Smith opined that there were certainly, at least, secondary psychiatric complications of a ten year history of chronic pain, if not primary or positive issues. DG 0130.

31101.1

34. Plaintiff notified Prudential of her intent to appeal the decision on or about January 21, 2001. DG 0230. Hannan Aff. ¶15.

35. Plaintiff then submitted a formal appeal, through counsel,[1] of Prudential's determination which was received by Prudential on or about November 5, 2001. DG 0242- DG 0268, DG 0268a-DG 553a. Hannan Aff. ¶15.

36. Prudential reviewed the entire file and the additional information Plaintiff provided. DG 0269- DG 0272. Hannan Aff. ¶ 16.

37. After a careful review by Prudential, its clinical team and Prudential's Medical Director, Prudential upheld its decision on or about January 14, 2002. DG0271. Hannan Aff. ¶ 16, 17.

38. Prudential noted in its decision that the additional medical documentation submitted by Greeley did not support total disability from a sedentary occupation. DG 0271. Hannan Aff. ¶ 16,17.

39. Prudential informed Plaintiff of her right to appeal the decision. DG 0272.

40. By letter of March 29, 2002, Plaintiff submitted her second appeal, which included additional medial documentation and a vocational evaluation. DG0274-DG 0283JJ, DG 0284, 0285, DG 0290- DG 0308G, DG 0309-DG 0317, Hannan Aff. ¶18.

41. Prudential acknowledged receiving the additional information in support of her second appeal on February 27, 2003. DG 0318.

---

[1] Plaintiff's current counsel, have been involved with this matter since Plaintiff's initial appeal of Prudential's decision. Counsel for Plaintiff has been involved at every stage of the appeals process and therefore has taken a role in shaping the administrative record as it exists today. The administrative record includes all correspondence and related material received from counsel.

42. As part of the appeals process, Prudential reviewed the entire claims file and the additional information provided by Plaintiff and determined again to uphold its initial decision on or about March 24, 2003. DG 0320- DG 0323, Hannan Aff. ¶ 19, 20.

43. Prudential noted that the additional information submitted by Greeley from Dr. Green indicated a psychiatric component to her condition, however, due to the applicable benefits limitation on psychiatric disabilities, the maximum benefit period had already been exhausted. DG 0322, Hannan Aff. ¶ 20.

44. Prudential also noted that the additional information from Ms. Flores did not indicate any functional deficits. DG 0322.

45. Based on the information already contained in the claims file and the additional information, Prudential upheld its original decision. DG 0320- DG 0323.

46. Prudential informed Greeley that she could appeal the decision for a final decision by the Appeals Committee. DG 0323.

47. Two months later, Greeley's counsel informed Prudential of its intent to submit an appeal of the decision. DG 0324.

48. Prudential acknowledged receipt of the letter stating Greeley's intent to appeal the decision. DG 0325.

49. Plaintiff submitted her complete third appeal which Prudential received on or about September 23, 2003. DG 0326- DG 0333K, Hannan Aff. ¶ 21.

50. Greeley confirmed on October 30, 2003, that she had submitted all documentation in support of her appeal. DG 0339.

31101.1

51. Plaintiff did not submit any additional medical information to support her third request for reconsideration. DG 0355.

52. Prudential retained a consulting physician, again, to perform a review of Greeley's medical records. DG 0340- DG 0346, DG 0355, Hannan Aff. ¶24.

53. Prudential noted that Dr. Moorehead noted that no physical examination was conducted to support the diagnosis of fibromyalgia. DG 0355, DG 0345.

54. Prudential noted that the consulting physician opined that neither psychiatrist who examined Greeley opined that her somatoform disorder would prevent her from working. DG 0355, DG 0346.

55. Also, the consulting physician opined that there appeared to be no documentation to support an inability to perform the material and substantial duties of a sedentary or light work job. DG. 0355, DG 0346.

56. Prudential also had a transferable skills analysis (TSA) and labor market survey (LMS) conducted. DG 0356, DG 0348- DG 0351, Hannan Aff. ¶24.

57. This analysis and survey was conducted based on the most recent consulting physician file and the Vocational Assessment which Greeley provided from Dr. Green. DG 0356, DG 0348.

58. Prudential noted that the TSA and LMS indicated a number of occupations which Greeley could perform given her medical status. DG 0356, DG 0350.

59. The positions identified by the TSA and LMS were sedentary positions which required the transferable and marketable work skills that Greeley possessed. DG 0349- DG 0350.

31101.1

60. Prudential upheld its decision on or about December 23, 2003. DG 0354- DG 0357, Hannan Aff. ¶26.

61. Prudential confirmed that it had upheld it decision regarding Greeley's third request for reconsideration by letter misdated January 9, 2003 (the letter should have been dated January 9, 2004). DG 0358a- DG 0358d.

62. With Prudential's decision on Plaintiff's third request for reconsideration, Plaintiff had exhausted her administrative remedies and subsequently filed suit on or about April 15th of 2004. Hannan Aff. ¶27.

## CONCLUSION

Based on the following undisputed material facts, Prudential requests that the Court issue an order granting Prudential's Motion for summary judgment.

Respectfully Submitted,

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By Its Attorneys,

/s/ Carey Bertrand
William T. Bogaert, BBO#546321
Carey L. Bertrand, BBO#650496
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

## CERTIFICATE OF SERVICE

I, Carey L. Bertrand, hereby certify that a true copy of the foregoing *document* was served upon all counsel of record by forwarding a copy of the same, first class mail, postage prepaid on this 19th day of November 2004 to:

31101.1

Jeffrey Dretler, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA 02109


                    /s/ Carey Bertrand