UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAWN M. GREELEY,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant | CIVIL ACTION NO.<br><br>04-10772 DPW |

**AFFIDAVIT OF LAURA HANNAN IN SUPPORT OF
THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S
MOTION FOR SUMMARY JUDGMENT**

I, Laura Hannan, after being duly sworn, do depose and say as follows:

1. I am a Senior Disability Claims Examiner in the Prudential Disability Management Services Division of The Prudential Insurance Company of America ("Prudential"). As such, I am responsible for reviewing claims for disability benefits which are submitted to Prudential. I have been employed by Prudential since November 30, 1998.

2. I am personally familiar with the manner in which Prudential maintains the files and records which relate to the Digital Equipment Corporation Long Term Disability Coverage for all Employees (the "Plan"), established by Digital Equipment Corp. ("Digital"), and which relate to claims made by participants and beneficiaries under the Plan.

1

31311.1

3. My personal knowledge and the records and files maintained by Prudential in the usual course of business form the basis of this affidavit. It is the regular course of Prudential's business to maintain such records and files contemporaneously with the acts, transactions, occurrences or events documented by them, or within a reasonable time thereafter.

4. The Plan's long term disability ("LTD") benefits are funded by group long term disability insurance contract No. GD19100 issued by Prudential to Digital. *See* Record DG0001-0019.[1]

5. As claims administrator for the Plan, Prudential manages and administers claims for long term disability benefits. DG0020-0045 The Plan grants Prudential discretionary authority to approve or deny claims to ensure that decisions are made consistently, uniformly and according to the Plan's terms. *Id.*

6. Under the terms of the Plan, LTD benefits are paid during the first 24 months of Total Disability only if Prudential determines that the claimant is "not able to perform, for wage or profit the material and substantial duties of [her] occupation." DG0010.

7. The plaintiff began her employment with Digital in 1971. Compl.¶7. The Plaintiff was employed by Digital as a Manufacturing Manager. DG0052-54

8. Plaintiff was last actively at work for Digital on April 7, 1989. Compl.¶ 12, 17. As the basis for her absence from work, the plaintiff's attending physician stated as follows: chronic facial pain, symptoms of pain and limited mouth opening. DG 0055.

---

[1] All References to Record herein are to the documents attached to the parties' Record for Judicial Review (the "Record") filed with this Court on August 11, 2004. It should be noted that the Plaintiff submitted its own "Record." All documents in Plaintiff's Record are part of the Record.

2

31311.1

9. The plaintiff contacted Prudential regarding her claim for LTD benefits during the Plan's 26 week Elimination Period. DG0056-57.

10. Prudential then obtained a medical authorization form from the plaintiff and collected further medical records and reports from the plaintiff's treating physicians. DG0061.

11. Following the 26 week Elimination Period, Prudential approved the plaintiff's claim for LTD benefits. The Plan began paying LTD benefits to the plaintiff effective October 7, 1989.

12. After approving the claim, Prudential periodically reviewed and monitored the claim by seeking updated medical records, retaining independent physicians for physical examinations, performing record reviews and retaining investigators for surveillance to update her activities. DG 0080-0222.

13. By letter dated 12/21/00, Prudential notified the plaintiff of its determination that she no longer met the Plan's definition of Total Disability. DG0225-0229 Benefits were to be discontinued effective April 1, 2001. In its letter, Prudential stated, among other things, that:

> The information in your file documents that you stopped working on April 7, 1989 from your job as a Manufacturing Manager with the Digital Company. Your job is classified as administrative and sedentary in nature. Your initial claim was submitted due to your complaints of right face pain attributed to TMJ. You consulted with a doctor in Florida who recommended surgery and in 1988 you were treated with bilateral surgery on your temporo-mandibular joints. Following surgery you participated in an out-patient pain management program because you did not have a relief of your symptoms. In your claimant statement completed in August, 1989 you wrote that you were unable to work due to severe facial pain and current treatment required 7-9 hours per day of physical therapy.
>
> On June 13, 1995, Dr. Robert Pick, Orthopedic Surgeon, completed an Independent Medical Examination. This examination was performed in

3

31311.1

conjunction with Dr. Ronald Donelson, non-operative care. You reported that you had pain going down your neck, going across your shoulders, stabbing in your eyes, shoulder paralysis and fatigue. By this time you were only treating with herbal medications and taking Flexeril about one time per week. You reported that your threshold for pain is "remarkable." You reported the capacity to engage in travel, art classes and gardening. You said that you were restricted due to low tolerance for noise, air conditioning, light, some smells, poor concentration and inability to read for long periods of time. Physical Examination was not notable for any significant impairments. In summary, Dr. Pick opined that he was unable to objectively substantiate an orthopedic condition or entity that would preclude you from returning to work. Dr. Donelson opined that there is no evidence that any of your symptoms are emanating from the cervical spine and that the diffuseness of your symptoms cannot be attributed to TMJ. Dr. Donelson opined that you have significant non-organic/behavioral issues that dominate your perception of your symptoms and disability. Dr. Donelson opined that there were no physical findings to support your inability to work, but believed you may be unable to work due to your behavioral issues and your self-perception. Dr. Donelson recommended a psychiatric evaluation.

In September 1995, Dr. G. Richard Smith, Psychiatrist, completed an Independent Medical Review of your claim file. Dr. Smith opined that in all probability you have a substantial psychiatric disorder, possibly somatization or depression which can be effectively treated. Dr. Smith opines that the constant quality of your reported pain, your reports of severe fatigue, numerous evaluations where "nothing is found wrong" and your seeking consultation in a location substantially different than your home support you have an underlying psychiatric condition. Dr. Smith recommended a psychiatric consultation.

On February 8, 1996, Dr. Don Lipsitt, Psychiatrist, completed an Independent Medical Examination. During the examination you presented yourself as guarded, angry and resentful. Your complains were of difficulty sleeping and pain. Dr. Lipsitt opined that it was difficult to make a positive assessment of you, and that additional information about your work situation when your symptoms developed and the birth of your son would be beneficial to obtain clarification on. Dr. Lipsitt opined that your personality was consistent with that of somatizers in your inability to describe feelings, in a lack of ability to connect potentially stressful life events with onset of symptoms and in your extensive use of the defense of denial. Dr. Lipsitt opined that with onset of symptoms and in your extensive use of the defense of denial. Dr. Lipsitt opined that you were strongly attached to your chronic pain and to your disability payments and had little motivation to pursue possible psychological stressors to help

explain the onset of your symptoms. Dr. Lipsitt opined that you had Somatoform Pain Disorder or Somatoform Disorder.

It was our determination that as of February, 1996 the medical documentation did not support that there was any physical sickness or injury that resulted in impairments significant enough to prevent you from returning to work. Given the opinions of several of the Independent Medical Examiners that you may have a mental, psychoneurotic or personality disorder that impaired your ability to work benefits were continued. Under the benefit limitation noted above, you would be eligible for a maximum of an addition 24 months of benefits for Disabilities as determined by Prudential to be caused at least in part by a psychiatric condition.

In November and December, 1997, and in August, 2000 we completed a Surveillance Investigation of your activities. These investigations document that you are very active in your community and have a level of functioning that surpasses the physical requirements of sedentary work. The Chilmark Town Hall lists your occupation as artist. The investigation in 1997 observed your sale of watercolors at the Featherstone Meeting House. Your pictures were on sale for between $325 and $395 and were all completed that year. We observed that you have the capacity to be out of your home performing various activities for full days and that you engage in socializing with your peers, shopping, boating, are a member of the Executive Committee of the Chilmark Town Affairs Council, etc. By your own report you attend art classes, exercise for long durations daily, do gardening, all which require physical abilities exceeding those required for a sedentary job. The documentation we have from the Surveillance Investigations and your own report of your activities is not consistent with your claim for total disability.

In June, 2000 you advised our office that you had been treated successfully for breast cancer on your left side at Dana Farber Cancer Institute. We obtained medical records from Dana Farber on August 21, 2000. You report that you have a lumpectomy and radiation treatment which was completed by September, 1998. You also reported that you were treating with a Tibetian Doctor with herbal medications, but that we would not be able to get in touch with him for medical records because he only comes to the United States a few times per year.

On December 5, 2000 we wrote to advise you that we had all of your current medical records and were having your claim reviewed in an Independent Medical Review by a Medical Doctor who's specialty is Internal Medicine, Rheumatology, and Occupational Medicine.

On December 16, 2000 Dr. Gwen Brachman completed her review of your medical records dating back to 1991 through the present, surveillance investigations, Independent Medical Examination (IME) reports as referenced above, Vocational Rehabilitation Evaluation, your job description and initial claimant statements. Dr. Brachman summarizes that you have reported chronic diffuse musculoskeletal pain since at least 1985. Records from your treating therapists do not include physical examination or functional assessments. Statements from your various therapists with regards to your inability to work is based entirely on your subjective report. Two IMEs performed by Orthopedic specialists are unable to document any significant physical impairment nor relate your complaints to any known organic or mechanical abnormalities. A file review and an IME performed by Psychiatrists support the presence of an underlying psychiatric disorder(s) as the cause of your complaints. Your daily activities require physical capabilities exceeding those required for a sedentary job. In summary, Dr. Brachman opined that your symptoms do not appear to cause an impairment that would prohibit you from physically performing the essential functions of your sedentary occupation.

We note that you have been denied Social Security Disability benefits at least three times by the Social Security Administration.

After a Thorough evaluation of the above information, we have determined that you do not meet the criteria of Total Disability and have terminated your claim as effective January 1, 2001. As a measure of assistance, we have extended benefits through March, 2001 and will provide job placement services if you desire to return to work.

You have a right to appeal our decision. If you elect to do so, the appeal must be made in writing by you or your authorized representative. The appeal may identify the issues and provide other comments or additional evidence you wish considered, as well as pertinent documents you may wish to examine. The written appeal should be submitted to:

Appeals Review Unit
Prudential
Disability Management Services
PO Box 2300
Parsippany, NJ 07054

If you have any questions, please contact me at (800) 842-1718, extension 8633.

Sincerely,

31311.1

6

Jennifer Nichols
Team Manager

14. By letter dated January 21, 2001 the plaintiff appealed Prudential's decision to discontinue benefits. DG 0230. Plaintiff through counsel, submitted a formal appeal of Prudential's decision on or about November 5, 2001. DG0242-0268, DG268a-DG553a.

15. In connection with plaintiff's appeal, Prudential thoroughly reviewed its file and all information submitted by the Plaintiff. Prudential had a vocational review performed and its medical director reviewed the file. DG0269-0272.

16. By letter dated January 14, 2002, Prudential notified the plaintiff that it had decided to uphold its decision to discontinue benefits. Prudential concluded that the plaintiff was no longer total disabled within the meaning of the Plan. DG0269-0272. In its letter, Prudential stated, among other things, that

> You submitted additional medical records on behalf of Ms. Greeley as part of your request for reconsideration of her claim for Long Term Disability (LTD) benefits. These records included notes from Ms. Greeley's physical therapist dating back to 1997, as well as a narrative completed by Dr. Yudowitz, Psychiatrist and attorney.
>
> The additional medical documentation as well as the existing documents in file was reviewed with our clinical team and Medical Director. We have determined that the records do not support total disability from a sedentary occupation. Dr. Yudowitz indicates that Ms. Greeley is suffering from Fibromyalgia and secondary depression which is causing disability. However this is out of Dr. Yudowitz' scope to make a diagnosis of Fibromyalgia as he is a Psychiatrist. The medical review completed by Dr. Brachman, who specializes in Rheumatology and Internal Medicine, supports that Ms.Greeley possesses the physical functional capability to perform the material and substantial duties of a sedentary occupation on a sustained and gainful basis.

7

31311.1

**Information about Ms. Greeley's activities**
We completed an activities surveillance of Ms. Greeley in November and December 1997 and in August of 2000. The investigations document that Ms. Greeley is active in her community. Ms. Greeley has painted and sold watercolors in the past. The activities document her being out of the home, socializing with peers, shopping and boating. Ms. Greeley has indicated that she attends art classes and does gardening as well.

**Information about Ms. Greeley's occupation**
Ms. Greeley worked as a Manufacturing Manager prior to going out of work. In our initial decision, we indicated that her occupation was sedentary in nature. Upon reviewing the additional information submitted with your appeal, we have determined that Ms. Greeley's occupation was not sedentary in nature.

**Summary**
Based on the medical documentation in file, including the review with our Medical Director, we have determined that the medical documentation supports that Ms. Greeley is physically capable of performing the material and substantial duties of a sedentary occupation on a sustained and gainful basis. In order to determine if Ms. Greeley possesses the transferable skills to transition to sedentary employment, we completed a vocational review. In order to be considered gainfully employed, Ms. Greeley must possess an earnings capacity equal to or greater than her scheduled benefit amount of $6,598.21 or $38.07 per hour. The following positions were identified which Ms. Greeley possesses the education, training and experience to perform, fall within the sedentary work category and exist in Ms. Greeley's local labor market:

Director, Records Management - $21.50 to $44.16 per hour
Contract Administrator - $18.59 to $38.26 per hour
Manager, Sales - $22.42 to $46.47 per hour
Manager, Reports Analysis - $21.50 to $44.16 per hour

The medical documentation in file suggests that Ms. Greeley may have a psychiatric condition which is impacting her ability to return to work. However, under the Group Policy she has exhausted the maximum 24 months of benefits allowable for a disability caused at least in part by a psychological condition as of October 7, 1991.

Based on information in file, we are upholding our initial decision to terminate Ms. Greeley's claim as of April 1, 2001. The records as well as Ms. Greeley's documented activities support that she is capable of performing other work duties on a sustained and gainful basis.

**Right to Appeal**

Ms. Greeley may appeal our decision. If she elects to do so, the appeal must be made in writing by her or her authorized representative. The appeal may identify the issues and provide other comments or additional evidence she wishes considered, as well as any pertinent documents she may wish to examine. The written appeal should be submitted to:

> Manager, Appeals Review Unit
> Prudential Insurance Company of America
> Disability Management Services
> PO Box 13480
> Philadelphia, PA 19101

If you have any questions, please contact myself or Brian Fuller at (800) 842-1718, extension 8819.

Sincerely,

Michelle Ignotis
Team Manager


17. There was no activity on this claim between January 14, 2002 and March 29, 2002. However, by letter dated March 29, 2002, the plaintiff submitted a second appeal of Prudential's 12/21/01 claim decision. DG0274-0283JJ. Plaintiff submitted a vocational evaluation to Prudential in support of her appeal. DG0290-308G, DG0309-DG0317.

18. On March 24, 2003, Prudential responded to the plaintiff's second request for reconsideration upholding its original determination to terminate benefits. DG0320-0323.

19. By letter dated March 24, 2003, Prudential advised the plaintiff that it had completed its review of plaintiff's request for reconsideration, and that Prudential had

31311.1

9

upheld the decision to discontinue LTD benefits. DG0320-DG0323. Prudential's letter of March 24 states in part as follows:

> LTD benefits were terminated effective April 1, 2001 because we determined that the documentation did not support a sickness or accidental injury that would prevent Ms. Greeley from performing the duties of any job as outlined in (1b) above. Additionally, we determined that Ms. Greeley's condition was subject to the Benefit Limitation. Please refer to our letters, dated December 21, 2000 and January 14, 2002, for complete explanations of our decision.
>
> We have since received your second request for reconsideration of our decision to terminate Ms. Greeley's LTD claim. In your appeal, you indicate that Ms. Greeley remains incapable of performing any occupation due to her medical condition. Included with your appeal is a letter from Matilde Flores, Lic.AC. CCH.., dated June 15, 2002, opining that, due to chronic pain, Ms. Greeley has experienced a decrease in her level of functioning that would render her incapable of performing the duties of any job. Also included on appeal is a January 31, 2003 vocational evaluation conducted by vocational psychologist, Emmanuel B. Green, Ph.D.
>
> In his evaluation, Dr. Green notes myriad conditions that would impact Ms. Greeley's ability to work, including chronic pain, headaches, shoulder pain, neck pain, wrist pain and difficulties with concentration and attention. Dr. Green opines that Ms. Greeley has significant occupations limitations that would preclude her from performing any occupation for which she is reasonably fitted by her education, occupational background, training or experience.
>
> We have reviewed all information in file, including documentation provided for the purpose of appeal.
>
> Ms. Greeley's complete medical file was reviewed by an Independent Psychiatrist, Dr. G. Richard Smith in September 1995. Dr. Smith indicated that, in all probability, Ms. Greeley had a substantial psychiatric disorder with possible somatization or depression. He opined that the constant quality of her reports of pain and fatigue, as well as numerous evaluations where nothing was found to be wrong, supported the existence of an underlying psychiatric condition.
>
> On February 8, 1996, Ms. Greeley was seen for an Independent Medical Examination (IME) with Dr. Don Lipsitt, Psychiatrist. Dr. Lipsitt indicated that Ms. Greeley's personality was consistent with that of

somatizers. He stated that Ms. Greeley was strongly attached to her chronic pain complaints and disability payments and had little motivation to pursue possible psychological stressors to help explain her symptoms. Dr. Lipsitt provided a diagnosis of Somatoform Pain Disorder or Somatoform Disorder.

On December 16, 2000, Ms. Greeley's medical file was reviewed by Dr. Gwen Brachman, specializing in Rheumatology, Internal Medicine and Occupational Medicine. Dr. Brachman indicated that Ms. Greeley had reported chronic diffuse musculoskeletal pain dating back to 1985. Dr. Brachman further noted that the medical records did not contain physical examination findings and that Ms. Greeley's statement with regard to her inability to work were based entirely on subjective findings. Dr. Brachman opined that Ms. Greeley's symptoms did not appear to cause an impairment that would prevent her from physically performing the material and substantial duties of a sedentary occupation.

Although Dr. Green opines that Ms. Greeley is disabled under the Group Policy from performing any occupation due to her medical conditions, eligibility for benefits beyond October 6, 1991 is rendered subject to the Benefit Limitation pertaining to psychiatric conditions. Previous external examinations of Ms. Greeley, as well as reviews of her medical file, have noted that lack of significant findings of a physical nature given Ms. Greeley's reported symptoms. Since Ms. Greeley has already been paid the maximum benefit period payable for her psychological condition, the report completed by Dr. Green does not document an impairment that would support an inability on Ms. Greeley's part to perform sedentary work. Additionally, the letter from Ms. Flores does not document any functional deficits that would prevent Ms. Greeley from engaging in sedentary work.

Based on the medical reviews in file, as well as activities surveillance referenced in our previous letter, we have found no evidence of a sickness or accidental injury that would prevent Ms. Greeley from engaging in any occupation. Since we have determined that Ms. Greeley is not eligible for benefits beyond March 31, 2001, we have upheld our previous decision to terminate Ms. Greeley's LTD claim effective April 1, 2001.

You may appeal this decision to Prudential's Appeals Committee for a final decision. The Appeals Committee is the final level of review available. If you elect to do so, the appeal must be made in writing by your or your authorized representative. The appeal may identify the issues and provide other comments or additional evidence you may wish considered, as well as any pertinent documents you may wish to examine. The decision of the Appeals Committee will be final and cannot be further

> appealed. The written appeal should be submitted to my attention, and I will refer it to the Appeals Committee.
>
> If you have any further questions, please contact our office at (800) 842-1718.
>
> Sincerely,
>
> Christine Latore
> Manager

20. Plaintiff submitted additional materials in support of her third appeal and Prudential received a complete third appeal on September 23, 2003. DG0326-DG0333K.

21. Prudential informed Plaintiff that it was performing a thorough evaluation of her appeal. DG0336.

22. Plaintiff confirmed on October 30, 2003, that she would not be submitting any additional materials in support of her appeal. DG0339.

23. As part of its review, Prudential had a physician review Greeley's medical records. DG0340-DG0346. Also, Prudential had an additional vocational review performed. DG0348-DG0351.

24. Prudential updated Plaintiff regarding its progress in reviewing the claim. DG0347.

25. On December 23, 2003, Prudential rendered its decision to uphold the termination of benefits and informed Plaintiff of its decision to uphold its decision on or about January 9, 2004. DG0354-DG0357. In its letter, Prudential stated, among other things that:

> LTD benefits were terminated effective April 1, 2001 because we determined that the documentation did not support a sickness or accidental

injury that would prevent Ms. Greeley from performing the duties of any job as outlined in (1b) above. Additionally, we determined that Ms. Greeley's condition was subject to the Benefit Limitation. This decision was upheld on previous levels of appeal. Please refer to our letters, dated December 21, 2000, January 14, 2002 and March 24, 2003, for complete explanations of our decision.

We have since received your third request for reconsideration of our decision to terminate Ms. Greeley's LTD claim. In your appeal, you indicate that Ms. Greeley remains unable to perform the material and substantial duties of any occupation, including occupations identified in Prudential's prior decision letters. No additional medical documentation was provided for review.

As part of our evaluation of Ms. Greeley's third appeal, we forwarded her medical file to a consulting physician. According to the evaluation, Ms. Greeley has a history of chronic facial and musculoskeletal pain for the past 18 years or more. She has seen a facial surgeon who documented arthritis of the temporomandibular joint. She saw a vocational psychologist who concluded that she was unable to work because of the effects of her chronic pain. She saw a psychiatrist who concluded that she had fibromyalgia. However, no physical examination was provided with this evaluation, no tender point examination was provided and no other examining physician has documented a diagnosis of fibromyalgia based on history and physical examination.

The consulting physician goes on to note that Ms. Greeley has seen Orthopaedic surgeons who are not able to document any musculoskeletal condition that would account for the severity of her symptoms or for her inability to perform the essential functions of her work. In agreement with the opinions of these Orthopaedic surgeons, the consulting physician indicates that there appears to be no documentation in these records that supports a physical inability to perform the material and substantial duties of a sedentary or light work job.

As indicated in previous correspondence, Ms. Greeley was seen for an Independent Medical Examination (IME) with Dr. Robert Pick, Orthopedist, and Dr. Ronald Donelson on June 13, 1995. Dr. Pick indicated that he was unable to objectively substantiate an orthopedic condition that would prevent Ms. Greeley from returning to work. Dr. Donelson indicated that there were no physical findings to support an inability for Ms. Greeley to return to work. However, he indicated that there may have been behavioral issues that were impacting Ms. Greeley's ability to return to employment. Dr. Donelson recommended a psychiatric evaluation to further determine if Ms. Greeley has a psychiatric condition.

31311.1

Ms. Greeley's complete medical file was reviewed by an Independent Psychiatrist, Dr. G. Richard Smith in September 1995. Dr. Smith indicated that, in all probability, Ms. Greeley had a substantial psychiatric disorder with possible somatization or depression. He opined that the constant quality of her reports of pain and fatigue, as well as numerous evaluations where nothing was found to be wrong, supported the existence of an underlying psychiatric condition.

On February 8, 1996, Ms. Greeley was seen for an Independent Medical Examination (IME) with Dr. Don Lipsitt, Psychiatrist. Dr. Lipsitt indicated that Ms. Greeley's personality was consistent with that of somatizers. He stated that Ms. Greeley was strongly attached to her chronic pain complaints and disability payments and had little motivation to pursue possible psychological stressors to help explain her symptoms. Dr. Lipsitt provided a diagnosis of Somatoform Pain Disorder or Somatoform Disorder.

On December 16, 2000, Ms. Greeley's medical file was reviewed by Dr. Gwen Brachman, specializing in Rheumatology, Internal Medicine and Occupational Medicine. Dr. Brachman indicated that Ms. Greeley had reported chronic diffuse musculoskeletal pain dating back to 1985. Dr. Brachman further noted that the medical records did not contain physical examination findings and that Ms. Greeley's statements with regard to her inability to work were based entirely on subjective findings. Dr. Brachman opined that Ms. Greeley's symptoms did not appear to cause an impairment that would prevent her from physically performing the material and substantial duties of a sedentary occupation.

Eligibility for benefits beyond October 6, 1991 is rendered subject to the Benefit Limitation pertaining to psychiatric conditions. Previous external examinations of Ms. Greeley, as well as reviews of her medical file, have noted the lack of significant findings of a physical nature given Ms. Greeley's reported symptoms.

A Transferable Skills Analysis (TSA) / Labor Market Survey (LMS) was conducted based upon the most recent consulting physician file review and the Vocational Assessment performed by Dr. Emmanuel Green which was provided by your office during the previous level of appeal.

Based on the skills and knowledge that Ms. Greeley acquired from her prior work history, the TSA/LMS identified a number of occupations for which she has general transferable skills and residual functional capacity to perform given her medical status. Therefore, Ms. Greeley is expected to be reasonably employable in the following occupations within the Boston, MA labor market.

    Branch Manager, 183.117-010, $105,120/yr.
    Project Director, 189.117-030, $101,860/yr.
    Management Analyst, 161.167-010, $80,100/yr.
    Manager Administrative Services, 169.167-014, $67,740/yr.
    Production Coordinator, 221.167-018, $80,370/yr
    Manager/Department, 189.167-022, $103,130/yr.

Based on the medical reviews in file, as well as activities surveillance referenced in our previous letters, we have found no evidence of a sickness or accidental injury that would prevent Ms. Greeley from engaging in any gainful occupation. Since we have determined that Ms. Greeley is not eligible for benefits beyond March 31, 2001, we have upheld our previous decision to terminate Ms. Greeley's LTD claim effective April 1, 2001.

Ms. Greeley's claim has been reviewed by Prudential's Appeals Committee, which is the final level of appeal available. The decision on her claim is final and cannot be further appealed.

If you have any questions, please contact our office at (800) 842-1718.

Sincerely,

Dan Dougherty
Director

26.      Plaintiff exhausted her administrative appeals.

27.      The administrative review afforded to the plaintiff by Prudential in this matter was consistent with the policies and procedures set forth in the group long term disability policy issued by Prudential to Digital. DG0001-0019, DG0020-0045.

31311.1

16

Signed and sworn under the pains and penalties of perjury this __11__ day of November, 2004.

                                                                 Laura Hannan
Senior Claims Examiner
Disability Management Services
The Prudential Insurance Company of America

31311.1