UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAWN M. GREELEY,

Plaintiff,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

Defendant

CIVIL ACTION NO.

04-10772 DPW

## DEFENDANT'S, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE RECORD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, The Prudential Insurance Company of America ("Prudential") submits this memorandum of law in support of its motion for summary judgment on the record.

**PROCEDURAL HISTORY**

Plaintiff, Dawn M. Greeley ("Greeley"), filed suit on or about April 15th of 2004 in the United States District Court for the District of Massachusetts to recover long term disability benefits under a group insurance policy issued by Prudential to the Plaintiff's employer, Digital Equipment Corporation ("Digital"). In her Complaint, Greeley sought to recover benefits under the Plan through ERISA's civil enforcement provision, 29 U.S.C. 1132(a)(1)(B); ERISA § 502(a)(1)(B). Compl. ¶¶ 59-68. The parties agree that the Plaintiff's claims in this action relate to an employee welfare benefit plan and are governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Compl. ¶ 1, 2, 3, 59-68; Answer ¶ 2, 3. The

1

Plaintiff's claims fall under section 502(a)(1)(B) of ERISA.  *See Wickham v. Northwestern Nat'l Ins. Co.,* 908 F. 2d 1077, 1082 (1st Cir.), *cert. Denied,* 498 U.S. 1013 (1990).[1]

Defendant filed its answer to Plaintiff's Complaint on June 4, 2004.  On June 24, 2004, this Court ordered that the administrative record be filed on August 11, 2004 and that all dispositive motions be filed by October 15, 2004.  On September 8, 2004, Plaintiff filed a Motion for Procedural Order and/or Motion for Leave to Conduct Discovery.  This Court denied the Motion on September 24, 2004.   The parties then moved jointly to extend the deadline for filing summary judgment.  This Court granted the Joint Motion ordering that the deadline for summary judgment be extended to November 19, 2004.

## SUMMARY OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff filed this action seeking long term disability benefits under Group Contract No. GD-19100 issued by Prudential to Digital Equipment Corporation ("Digital"), which is an employee welfare benefit plan governed by ERISA.  Digital established and maintained the Long Term Disability Insurance Plan ("Plan").  DG 0001-DG0019, DG 0020-0045[2], Ewing Aff. ¶ 2, 3. Hannan Aff. ¶ 4.  Prudential underwrites the plan's long-term disability benefits and it serves as the claims administrator with regard to claims for long term disability benefits. DG0001-DG0019, DG 0020-0045, Hannan Aff. ¶ 4, 5.

Prudential contends that because the Plan grants it discretionary authority to determine eligibility for benefits, the appropriate standard of review is deferential and is limited to

---

[1] With regard to civil actions brought by Plan participants or beneficiaries to recover plan benefits, 29 U.S.C. §1132 provides, in part, as follows:

    (a)      A civil action may be brought --
             (1)  by a participant or beneficiary --…
    (B)      to recover benefits due him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan…

2

determining whether Prudential's claim decision is arbitrary and capricious, or without rational

basis. Under this standard, courts will uphold the decision if it is within the administrator's

authority, reasoned and supported by substantial evidence in the record. Inasmuch as the decision

on the plaintiff's claim is within Prudential's authority, is reasoned and is supported by substantial

evidence in the record, Prudential is entitled to summary judgment on the undisputed facts as a

matter of law.

I.      STATEMENT OF MATERIAL FACTS OF RECORD

      Pursuant to Local Rule 56.1 of the United States District Court for the District of

Massachusetts, Prudential sets forth the following statement of material facts of record, as to

which it contends there is no genuine issue to be tried.

      1.      The Parties and The Plan

      This suit arises out of Plaintiff's, Dawn M. Greeley, ("Greeley") participation in the

Digital Equipment Corporation's Long Term Disability Coverage for all qualified employees

disability insurance plan ("Plan"). The Plan was established and was maintained by Greeley's

former employer, Digital. DG 0001-0019. Ewing Aff. ¶ 2,3. Greeley asserts that the Plan is

governed by ERISA, which Prudential does not contest. See Plaintiff's Complaint and

Defendant's Answer.

      Digital contracted with Prudential to provide its employees with a long-term disability

plan as part of its employee benefits program. DG 0020-0045. Ewing Aff. ¶ 2,3. The Group

Contract, GD-19100 and the Plan contain the terms and conditions of the administration of the

LTD Plan. DG 0020-0045, Ewing Aff. ¶ 2,3, Hannan Aff. ¶ 4. Prudential underwrites the Plan's

---

[2] Citations to the record are to the bate stamped documents contained in the Record for Judicial Review filed by the Defendant.

long-term disability benefits and it serves as the administrator of the Plan with regard to claims

for long-term disability benefits. DG 0020-0045, Hannan Aff. ¶ 4,5.  Prudential has full

discretionary authority to control and manage all claims relating to the Plan. Hannan Aff. ¶5.

Prudential has the exclusive right to interpret and administer the provisions of the Plan. Hannan

Aff. ¶ 5. Prudential is the Administrator and a Fiduciary of the Plan.  Answer ¶ 6.  Pursuant to the

terms of the Plan with regard to claims for total disability benefits, the Plan's Booklet-Certificate

provides as follows: "Total Disability" exists <u>when Prudential determines</u> that all of these

conditions are met:

> (1) Due to sickness or accidental injury, both of these are true:
>> (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
>> (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience.  The Initial Duration if shown in the Schedule of Benefits.
> (2) You are not working for any job or profit.
> (3) You are under the regular care of a Doctor. (emphasis added)(See Group Plan 19100, DG 0010). Ewing Aff. ¶ 4, Hannan Aff. ¶ 6.

Greeley began her employment with Digital in 1971 as a Sales Analyst working out of its

Sales and Service Headquarters.  Compl. ¶ 7. Hannan Aff. ¶ 8. Greeley was a Plan participant

pursuant to her employment with Digital.  Answer ¶ 17.

    2.    <u>Plaintiff's Claim for LTD Benefits</u>

Greeley ceased working for Digital as a Manufacturing Strategic Resource Manager on or

about April 7, 1989 due to "TMJ" (temporomandibular joint syndrome) and facial pain. Compl. ¶

12, 17, Hannan Aff. ¶ 9.  Prudential began paying Plaintiff long term disability benefits on or

about October 7, 1989. Answer ¶ 17, Hannan Aff. ¶ 12.  On or about December of 2000, after

more than ten years of benefits being paid, Prudential determined, based on the medical records,

that Plaintiff no longer met the criteria of total disability as defined by the Plan. DG 0225-DG0229. Hannan Aff. ¶ 14.  Prudential informed Plaintiff that she would no longer receive benefit payments.  DG 0225- DG0229. Hannan Aff. ¶ 14. As a measure of assistance, Prudential extended benefits through March 31, 2001. DG 0225- DG0229.   As part of its decision to discontinue benefits, Prudential had Plaintiff's medical records reviewed by an independent physician and an independent psychiatrist during the decision making process. DG 0220- DG 0222, DG 0129- DG 0130.   Also, Prudential had arranged for the Plaintiff's examination by various independent medical doctors and psychiatrists in the years prior to the decision to terminate benefits.  DG 0143- DG 0145, DG 0111- DG 0116, DG 0107- DG 0110.  Further, Prudential arranged for a vocational consultant to perform a vocational assessment.  DG 0133-DG 0136.

In its decision, Prudential noted that two independent physicians who examined Greeley noted no physical findings to support her inability to work.  DG 0226-227.  Dr. Pick opined that orthopedically, he was unable to establish or substantiate a condition that precluded Greeley from engaging in her activities a manufacturing manager.  DG 0110.   Dr. Pick also opined that he was unable to objectively substantiate an orthopedic condition or entity.  DG 0010.  Dr. Pick noted he had reviewed multiple physical therapy documents, records from Gateway Health Care Associates (Matilde Flores, Acupuncturist) and other administrative documents, including a job description for a manufacturing manager.  DG 0110.  Dr. Donelson, an independent physician, noted that Greeley spent 3-4 hours on a home exercise program daily.  DG 0113.  The program consisted of stretches, Nordic Track, use of a massage chair, and heat application. DG 0113.  Also, Dr. Donelson noted that Greeley used light weights for strengthening as well.  DG 0113.

Dr. Donelson noted that he believed that Greeley had significant non-organic/behavioral issues that were dominating her perception of symptoms and disability.  DG 0115.  Like Dr. Pick, Dr. Donelson was unable to identify any objective findings that would support the degree of symptoms and disability that Greeley claimed.  DG 0016.  Dr. Donelson opined that Greeley had significant psychological dependency upon her elaborate treatment structure that she has built around her with these numerous clinicians.  DG 0116.

Prudential also noted that Dr. Lipsitt, a psychiatrist who examined Greeley, opined that Greeley was strongly attached to her chronic pain and to her disability payments and had little motivation to pursue possible psychological stressors to help explain the onset of her symptoms. DG 0227, DG 0145.  Prudential further noted that surveillance indicated that Greeley was active within her community.  DG 0227.   Also, Prudential noted that Dr. Gwen Brachman performed a complete review of the medical records, the surveillance reports and the IME reports and opined that Greeley's symptoms did not appear to cause an impairment that would prohibit Greeley from physically performing the essential functions of her sedentary occupation.  DG 0228.  Dr. Smith, a psychiatrist who performed a records review, opined that in all probability there was a substantial psychiatric disorder.  DG 0129- DG 0130.  Dr. Smith opined that there were certainly, at least, secondary psychiatric complications of a ten year history of chronic pain, if not primary or positive issues.  DG 0130.

Plaintiff notified Prudential of her intent to appeal the decision on or about January 21, 2001. DG 0230. Hannan Aff. ¶15.  Plaintiff then submitted a formal appeal, through counsel,[3] on

---

[3] Plaintiff's current counsel, have been involved with this matter since Plaintiff's initial appeal of Prudential's decision.  Counsel for Plaintiff has been involved at every stage of the appeals process and therefore has taken a role in shaping the administrative record as it exists today.  The administrative record includes all correspondence and related material received from counsel.

or about October 25, 2001 of Prudential's determination. DG 0242- DG 0268, DG 0268a-DG 553a. Hannan Aff. ¶15.  Prudential reviewed the entire file and the additional information Plaintiff provided.  DG 0269- DG 0272. Hannan Aff. ¶ 16. After a careful review by Prudential, its clinical team and Prudential's Medical Director, Prudential upheld its decision on or about January 14, 2002. DG0271. Hannan Aff. ¶ 16, 17.  Prudential noted in its decision that the additional medical documentation submitted by Greeley did not support total disability from a sedentary occupation.  DG 0271. Hannan Aff. ¶ 16,17.  Prudential informed Plaintiff of her right to appeal the decision.  DG 0272.

By letter of March 29, 2002, Plaintiff submitted her second appeal, which included additional medial documentation and a vocational evaluation. DG0274-DG 0283JJ, DG 0284, 0285, DG 0290- DG 0308G, DG 0309-DG 0317, Hannan Aff. ¶18.  Prudential acknowledged receiving the additional information in support of her second appeal on February 27, 2003. DG 0318.  As part of the appeals process, Prudential reviewed the entire claims file and the additional information provided by Plaintiff and determined again to uphold its initial decision on or about March 24, 2003. DG 0320- DG 0323, Hannan Aff. ¶ 19.  Prudential noted that the additional information submitted by Greeley from Dr. Green indicated a psychiatric component to her condition, however, due to the applicable benefits limitation on psychiatric disabilities, the maximum benefit period had already been exhausted.  DG 0322, Hannan Aff. ¶ 20.  Prudential also noted that the additional information from Ms. Flores did not indicate any functional deficits. DG 0322.  Based on the information already contained in the claims file and the additional information, Prudential upheld its original decision.  DG 0320- DG 0323.  Prudential informed Greeley that she could appeal the decision for a final decision by the Appeals Committee.  DG

7

0323.

Two months later, Greeley's counsel informed Prudential of its intent to submit an appeal of the decision. DG 0324. Prudential acknowledged receipt of the letter stating Greeley's intent to appeal the decision. DG 0325. Prudential received Plaintiff's complete third appeal on or about September 9, 2003. DG 0326- DG 0333K, Hannan Aff. ¶ 21. Greeley confirmed on October 30, 2003, that she had submitted all documentation in support of her appeal. DG 0339. Plaintiff did not submit any additional medical information to support her third request for reconsideration. DG 0355. Prudential retained a consulting physician, again, to perform a review of Greeley's medical records. DG 0340- DG 0346, DG 0355, Hannan Aff. ¶24. Prudential noted that Dr. Moorehead noted that no physical examination was conducted to support the diagnosis of fibromyalgia. DG 0355, DG 0345. Prudential noted that the consulting physician opined that neither psychiatrist who examined Greeley opined that her somatoform disorder would prevent her from working. DG 0355, DG 0346. Also, the consulting physician opined that there appeared to be no documentation to support an inability to perform the material and substantial duties of a sedentary or light work job. DG. 0355, DG 0346.

Prudential also had a transferable skills analysis (TSA) and labor market survey (LMS) conducted. DG 0356, DG 0348- DG 0351, Hannan Aff. ¶24. This analysis and survey was conducted based on the most recent consulting physician file and the Vocational Assessment which Greeley provided from Dr. Green. DG 0356, DG 0348. Prudential noted that the TSA and LMS indicated a number of occupations which Greeley could perform given her medical status. DG 0356, DG 0350. The positions identified by the TSA and LMS were sedentary positions which required the transferable and marketable work skills that Greeley possessed. DG 0349-

DG 0350.  Prudential upheld its decision on or about December 23, 2003.  DG 0354- DG 0357,

Hannan Aff. ¶26.  Prudential confirmed that it had upheld it decision regarding Greeley's third

request for reconsideration by letter misdated January 9, 2003 (the letter should have been dated

January 9, 2004).  DG  0358a- DG 0358d.  With Prudential's decision on Plaintiff's third request

for reconsideration, Plaintiff had exhausted her administrative remedies and subsequently filed

suit on or about April 15th of 2004. Hannan Aff. ¶27.

## II.    ARGUMENT

### A.  This Action is Ripe for Resolution by Summary Judgment Because There Are No Disputed Issues of Material Fact and Prudential and Getronics Are Entitled to Judgment As A Matter of Law.

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment must first demonstrate the absence

of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  In this case, the Plaintiff bears the burden of making a showing sufficient to establish

that Prudential's decision to discontinue LTD benefits was unreasonable. Terry v. Bayer, 145 F.3d

28 (1st Cir. 1998).

ERISA denial of benefit actions often are decided at the summary judgment stage.

Twomey, 328 F.3d 27, 31 (1st Cir. 2003); Terry, 145 F.3d 28, 30 (1st Cir. 1998); McMahon v.

Digital Equipment Corp., 162 F.3d 28, 39 (1st Cir. 1998). While Plaintiff may contend that there

is contrary evidence regarding her disability, such contention does not change this analysis. Terry,

145 F.3d at 45.  "[T]he facts of record, even viewed in the light most favorable to plaintiff, would

31086.1

be insufficient to convince any reasonable fact finder that [Prudential] acted arbitrarily and capriciously in determining that plaintiff was not entitled to Long Term Disability benefits." <u>Karamshahi v. Northeast Utilities Service Co.,</u> 41 F. Supp. 2d 101, 103 (D. Mass. 1999).

In accordance with Rule 56(c), this Court should grant Defendant's motion for summary judgment because, as will be shown below, there are no issues of fact material to the plaintiff's claim.

**B.  The Applicable Standard of Review of Prudential's Claim Decision Is Whether The Decision Was Arbitrary and Capricious Or An Abuse of Discretion Based on the Record Before Prudential At The Time It Made Its Decision.**

1.  <u>Standard of Review</u>

Judicial review in this matter is limited to determining whether Prudential's decision was arbitrary and capricious or without rational basis.  The Supreme Court has determined that "a denial of benefits challenged under §502(a)(1)(B) of ERISA, §1132(a)(1)(B), is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone v Tire & Rubber Co., v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Sullivan v. Raytheon Co.,</u> 262 F. 3d 41 (1st Cir. 2001); <u>Pari-Fasano v. ITT Hartford Life & Accident Ins., Co.,</u> 230 F. 3d 414, 418 (1st Cir. 2000);  <u>Terry</u>, supra, 145 F.3d at 35; *See also McLaughlin v. The Prudential Insurance Company of America,* 2004 U.S. Dist. LEXIS 9313 (U.S.D.C.-MA 2004).   When a clear discretionary grant is found, "<u>Firestone</u> and it progeny mandate a deferential arbitrary and capricious standard of judicial review." <u>Recupero v. New England Tel. and Tel. Co.,</u> 118 F.3d 820, 827 (1st Cir. 1997).

The present case involves an older policy, the Contract date being July 1, 1987 and

accordingly predates the Supreme Court's decision in <u>Firestone.</u> Obviously, the Plan does not contain the specific clause referenced in that decision. Nonetheless, the Plan language is sufficiently clear for this Court to determine that the arbitrary and capricious standard applies. Although the instant Contract does not contain a specific clause expressly stating that the Plan Administrator's discretion and authority, there can be no question after reading the Plan that Prudential is the ultimate and sole decision-maker when it comes to benefit determinations.

In four separate and distinct instances within the Plan, clear language exists which exemplifies Prudential's role as the sole decision-maker regarding benefit determinations. Moreover, there is no language within the Plan, which suggests that an entity other than Prudential retains any authority or control over the benefit determination decisions.

First, the Plan, in a section entitled, "Employee Long Term Disability Coverage-FOR YOU ONLY," states that "Total Disability" exists <u>when Prudential determines</u> that all of these conditions are met:

(1) Due to sickness or accidental injury, both of these are true:
    (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
    (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration if shown in the Schedule of Benefits.
(2) You are not working for any job or profit.
(3) You are under the regular care of a Doctor. (emphasis added)(See Group Plan 19100, DG 0010) Ewing Aff. ¶ 4.

Second, Prudential also retains the power to place an individual receiving benefits on Rehabilitation Status, in a section entitled, "Employee Long Term Disability Coverage-REHABILITATION STATUS DURING YOUR TOTAL DISABILITY,"

"To be placed on rehabilitation status, you must make advance written request to Prudential.  <u>Prudential will decide</u> if you will be placed on rehabilitation status and for how long." DG 0011 (emphasis added).

Third, regarding benefits for expenses of vocational rehabilitation, in a section entitled, "Employee Long Term Disability Coverage-BENEFITS FOR EXPENSES OF VOCATIONAL REHABILITATION,"

"<u>Prudential may determine</u>, after consulting with one's doctor, that one is able to be in a program of vocational rehabilitation and one should cease to be Totally Disabled to able to support oneself after being in such a program. " DG 0011. (emphasis added).

Finally, the Plan also explicitly states that Prudential's decisions govern determinations on benefit limitation in a section entitled, "Employee Long Term Disability Coverage-BENEFIT LIMITATION,"

"<u>This section applies if your Total Disability, as determined by Prudential</u>, is caused at least in part by mental, psychoneurotic or personality disorder (including alcoholism and drug abuse)." DG 0012. (emphasis added), Ewing Aff. ¶ 6.

The Plan language referenced above clearly indicates that Prudential alone retains the discretion to determine total disability within the terms and conditions of the Plan, to assess whether someone is a candidate for rehabilitation, vocational rehabilitation and to discontinue or limit benefits.  Moreover, this Plan language is not overly general or nonspecific.  In the first instance, Prudential determines whether one applying for benefits is totally disabled within the meaning of the plan.  After the initial determination, Prudential can determine whether one should be in rehabilitation or in a vocational rehabilitation program.  Finally, Prudential can determine the limitations of benefits.

31086.1

Other Massachusetts Courts in this Circuit have interpreted the particular policy language at issue here ("[y]ou are disabled when Prudential determines that…") and held that the language was sufficient to grant Prudential discretionary authority thereby applying the arbitrary and capricious standard of review. For example, the United States District Court for District of Massachusetts, District Judge Stearns, recently ruled, that the "[y]ou are disabled when Prudential determines that…" language was sufficient to grant Prudential authority and discretion and ruled that the applicable standard of review was arbitrary and capricious. *McLaughlin v. The Prudential Insurance Company of America*, 2004 U.S. Dist. LEXIS 9313 (U.S.D.C.-MA 2004*); See also McEleney v. The Prudential Insurance Company of America*, C.A. No.: 02-11666-MEL, Unpublished Endorsement of Judge Lasker, July 21, 2004, (Dist. MA 2004)(holding Plan language was sufficient to grant discretion and ruling that applicable standard of review was arbitrary and capricious), attached hereto as Exhibit 1.

Additionally, courts outside of the First Circuit have also determined that the language identical to the Plan language at issue in the instant matter was sufficient to grant discretion. In the case of *Lyles v. The Prudential Company of America*, the Court held that the same language at issue in the instant case granted Prudential discretion and ruled that the applicable standard of review was arbitrary and capricious. *See Lyles v. The Prudential Company of America*, 2004 U.S. Dist. LEXIS 11003 (U.S.D.C. East. D. MO 2004) *See also Strouse v. Pruvalue Insurance,* 2003 WL 21556932, *3 n.4 (N.D. Cal. 2003)(holding "determined" was enough to grant discretion in Plan administrator); *See also, Newman v. UNUM Life Insurance Company of America,* 2000 WL 1593443, at *2, (N.D. I11 2001)("[y]ou are disabled when UNUM determines that…"). The court applied the abuse of discretion standard in that case too. In reaching its decision, the

13

*Newman* court stated "[t]he court finds this language sufficiently clear to uniform plaintiff that the administrator would have discretionary authority to determine eligibility for benefits and to construe the terms of the plan," *Id.*

Furthermore, the language in the Plan is straightforward and therefore, should be given its natural meaning in an ERISA-regulated policy. Hughes v. Boston Mutual Life Insurance Company, 26 F.3d 264 (1st Cir. 1994). Furthermore, common sense cannons of contract interpretation can be used to construe ERISA-governed plans. Pizzoti v. Polaroid Corp., 985 F. 2d 13, 14 (1st Cir. 1998). At every stage of benefit determinations, Prudential has the sole authority, control and discretion to make decisions. Therefore, in the instant case, the Plan's precise language makes it clear that Prudential had the authority to make the decision to discontinue Greeley's benefits, which is at issue in the instant case.

Courts have considered Plans with less than the Firestone language and which do not contain explicit clauses and nonetheless, ruled that the matter is determined under the arbitrary and capricious standard. Although, this pre-Firestone Plan does not contain a "magic clause" which directs the Court to the applicable standard of review, if a close look is taken at the Plan language itself, one cannot be mistaken that the Plan language is sufficient to satisfy Firestone. Furthermore, "magic words" are not even required to hold that the Plan language indicates that the arbitrary and capricious standard of review should apply. *Brigham v. Sun Life of Canada*, 317 F. 3d 72, 81 (1st Cir. 2003); *Curtis v. Noel*, 877 F.2d 159 (1st Cir. 1989)(plan language providing that administrator shall determine "eligibility…and shall provide…interpretation of plan provisions" is sufficient to grant discretionary authority.) A variety or clauses and phrases can be used to determine that discretion is vested in the administrator or fiduciary. See Doe v. Travelers

14

Insurance Company, 167 F. 3d 53, 56 (1st Cir. 1999)(deferential arbitrary and capricious standard applied to ERISA-regulated plan where policy provided that Travelers "determines in its discretion, if a service or supply is medically necessary," and "no benefits are payable until the Patient Advocate determines the services are medically necessary."); See also Brigham, supra at 81 (1st Cir. 2003)(deferential arbitrary and capricious standard applied to ERISA-regulated plan where policy language provided the insurer "may require proof in connection with the terms or benefits of [the] Policy," and further provided "if proof is required, we must be provided with such evidence satisfactory to us as we may reasonably require under the circumstances.") Clearly, the language in the Plan is sufficient to satisfy Firestone and therefore, the arbitrary and capricious standard of review should apply to the instant case.

2.    Scope of Review Under Arbitrary and Capricious Standard

When a claims administrator has discretion in administering an ERISA-regulated employee benefit plan, judicial review is limited to determining whether the administrator's action is arbitrary and capricious or without rational basis.  Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29-30 (1st Cir. 2001).  The abuse of discretion standard limits the grounds upon which a discretionary claim decision can be disturbed. In reviewing such a decision, a court may not "substitute its judgement" for that of the claim fiduciary. Terry, 145 F.3d at 40. It is for plan fiduciaries, and not courts, to choose between reasonable alternatives involving plan interpretation and administration. Jestings v. New England Telephone & Telegraph Co., 757 F.2d 8, 9 (1st Cir. 1985).

When vested with discretionary authority, it is the claim administrator's responsibility to weigh conflicting evidence. Vlass, 244 F.3d at 32. It is the claim administrator's responsibility to

make factual finding relating to a claimant's condition. <u>Doyle</u>, 144 F.3d at 185.  Under the Plan, it is Prudential's duty to determine whether a claimant is able to perform the material and substantial duties of his or her occupation due to sickness or accidental injury. DG 0001- DG 0019.

When the arbitrary and capricious standard is applied, Prudential's decision can be overturned only if the insurer's eligibility determination was unreasonable in light of the information available to it.  <u>Boardman v. The Prudential Insurance Company of America et al.</u>, 337 F. 3rd 9, 15 (1st Cir. 2003); <u>Pari-Fasano,</u> supra at 419.  "Contrarily, the insurer's decision must be upheld if it was within the insurer's authority, reasoned and supported by substantial evidence in the record." See <u>Boardman</u> citing <u>Doyle</u>, supra at 184.  "The existence of contrary evidence does not necessarily render Prudential's decision arbitrary." See <u>Boardman</u> citing <u>Vlass</u>, supra at 30.

Because the Plan affords Prudential discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, Prudential's decision must be upheld unless it is arbitrary, capricious, or an abuse of discretion. <u>Sullivan</u> v. <u>Raytheon</u> Co., 262 F.3d 41(1st Cir. 2001).  Here, Prudential made a decision based on the terms and conditions of the Plan, the opinions of independent physicians and psychiatrists who performed examinations, opinions of medical and psychiatric record reviewers, vocational assessments and the medical information contained in its file.  The decision letters of Prudential clearly state the reasoning for its initial decision to terminate benefits and the subsequent decisions to uphold its initial determination. (initial decision-DG 0225- DG 0229, Hannan Aff. ¶  14), (first appeal- DG 0269-0272, Hannan Aff.  ¶16, 17), (second appeal-DG 0320-0323), (final appeal-DG 0354- 0357, Hannan Aff. ¶26).

Thus, Prudential's decision was clearly reasonable given the information available to it at the time of the decision and should be upheld.

      3.     <u>Record for Review</u>

      In an ERISA denial of benefits action, where abuse of discretion is the standard of review, the ordinary rule is that review is limited to the record made before the entity being reviewed, which, in this instance, is Prudential. <u>Liston</u> v. <u>Unum Corp. Officer Severance Plan</u>, 330 F.3d 19, 23 (1st Cir. 2003). The proper record to be considered by the Court is the record before Prudential when it made its final claim decision. *See* <u>Kiley v. Travelers Indem. Co.</u>, 853 F. Supp. 6, 14 (D. Mass. 1994)("at least in the context of applying deferential standard of review, this Court will limit the record to the facts before [the claims administrator] absent further guidance from the First Circuit"). In <u>Liston</u>, the First Circuit stated that "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." <u>Id</u>.

      On August 11, 2004, Defendant filed its Record for Judicial Review.[4] The Record contains the documents that were before Prudential when it made its final benefit determination and consists hundreds of pages of documents. The full record for judicial review is now before the Court. Plaintiff may argue that the Record should be comprised of a limited number of documents which are already contained within the Defendant's Record. However, ignoring the evidence which Prudential reviewed and/or relied on in making its decision would be contrary to the purposes of judicial review. <u>Cleary v. Knapp Shoes, Inc.</u>, 924 F. Supp 309, 315 (USDC-MA 1996)([w]here an adequate administrative record has been created, allowing the development and

---

[4] This Record was then updated, due to some clerical errors on November 10, 2004.

submission of additional evidence would frustrate ERISA's goal of expeditious resolution of

benefit disputes.) This Court should review the record as it stood before Prudential, not some

abbreviated version supplied by the Plaintiff's attorneys.  Based on the standard of review, the

scope of review and the Record, the Defendants are entitled to summary judgment as a matter of

law.

**C.     Prudential's Determination That Plaintiff Was Not Totally Disabled Is Reasonable
And Should Be Upheld Because It Is Supported By Substantial Evidence in the
Record.**

1.   The Are Contractually Supportable Reasons for Denying Benefits

There is evidence in the record that is reasonably sufficient to support Prudential's

conclusion that the Plaintiff has the capacity to perform the duties of a manufacturing manager.

*See* Sullivan, supra at 51 (security guard's ability to perform work in a sedentary environment

made him ineligible for LTD benefits).  In making its claim decision, Prudential relied upon the

Plan's definition of Total Disability, the Benefit Limitation, the physical requirements of the

position of Manufacturing Manager at Digital, other occupations which Plaintiff were reasonably

fitted to Plaintiff given her medical status and prior education, experience and training, and the

plaintiff's medical and physical therapy records.

In reaching its determination that Plaintiff no longer met the criteria of total disability,

Prudential considered that in order to be deemed Totally Disabled under the Plan after the Initial

Duration Period, the plaintiff must be incapable of performing, for wage or profit, the material

and substantial duties of any job for which you are reasonable fitted by your education, training or

experience.  DG 0010(emphasis added).  Also, Prudential considered that benefits for a disability

related to any psychiatric condition are limited to a twenty-four (24) month period. DG 0012.

18

In the instant case, Plaintiff exhibited physical capacity to perform the material and substantial duties of any job for which she was reasonable fitted given her education, training or experience.  Plaintiff may argue that her previous job was not sedentary and that Prudential erroneously based its decision to terminate benefits on an assumption that her position at Digital was sedentary.  Plaintiff's argument is irrelevant because, based on the criteria of the Plan, since several years had gone by since Greeley began receiving benefits, the Initial Duration period had run.  Thus, Plaintiff was evaluated by Prudential in its decision based on whether she could perform not only the material and substantial duties of her own occupation plus the ability to perform the material and substantial duties of any other appropriate position.  Prudential obtained various medical opinions which led it to conclude that Greeley had certain physical capacity, sufficient to gain employment.  Drs. Pick and Donelson both opined that no condition existed to preclude Greeley from working.  DG 0110, DG 0116.  Also, Prudential obtained a complete vocational analysis which identified occupations which were suited to Greeley's education, training and experience.  Given the medical opinions and vocational assessment, Greeley no longer met the criteria of Total Disability as defined by the Plan.  Thus, there were contractual reasons supporting the decision to terminate benefits.

2.  <u>Substantial Evidence Exists to Support Prudential's Decision</u>

Substantial evidence exists within the record to support Prudential's decision.  Thus, the decision itself was not unreasonable under a deferential standard of review.  Moreover, a reviewing court does not weigh the evidence and determine which side it believes is right. <u>Doyle</u> v. <u>Paul Revere Life Ins. Co</u>, 144 F.3d 181, 184 (1st Cir. 1998).  The reviewing court's limited role is to decide whether the claim decision was supported by substantial evidence. <u>Terry</u>, 145 F.3d

41. In this context, substantial evidence is evidence that is reasonably sufficient to support a conclusion. <u>Doyle</u>, 144 F.3d at 184.

The fact that Dr. Yudowitz and Matilde Flores, Lic. Ac. CCH., opined (or believed) that Plaintiff was totally disabled does not render Prudential's claim decision arbitrary and capricious. *See* <u>Guarino v. Metropolitan Life Ins. Co.,</u> 915 F. Supp. 435, 445 (D. Mass. 1995)(granting summary judgment to the defendant in a long term disability action involving an ERISA-regulated benefit plan.); *see also* <u>Jestings v. New England Tel. And Tel. Co.,</u> 757 F.2d 8, 9 (1st Cir. 1995)(reiterating that it is for the trustee of the plan, and not judges, to choose between reasonable alternatives). Inasmuch as Prudential's decision was not lacking a "rational basis," the Court cannot disregard it. <u>Govoni v. Bricklayers, Masons & Plasters Int'l Union of America, Local 5,</u> 732 F.2d 250, 252 (1st Cir. 1984). The existence of contrary evidence does not make Prudential's decision arbitrary. <u>Vlass</u>, supra at 30.

Greeley did not offer the opinion of one doctor specializing in a field related to chronic pain disorders or fibromyalgia to substantiate her claim for benefits. Greeley offered the opinion of Matilde Flores, a licensed acupuncturist and herbalist, to support her inability to work. DG 0284. Also, Plaintiff submitted the opinion of Dr. Yudowitz, a psychiatrist, to support her contention that her symptoms were not psychosomatic. DG 551a- DG 553a. Neither of these opinions are offered by physicians whose scope of practice it is to assess the chronic pain and related disorders which Greeley claimed to suffer from. Flores' opinions never mentioned any functional deficits which would preclude Greeley from gainful employment. DG 0322. Moreover, no physical examination was conducted to support the diagnosis of fibromyalgia. DG 0355, DG 0345.

31086.1

Prudential's decision was based on not only the medical evidence but also on the contractual definitions of total disability as outlined in the Plan. Thus, the complete medical record, including Dr. Yudowitz's and Ms. Flores' opinions, must be reviewed in light of the contractual definitions of Total Disability. Moreover, there was significant evidence that Plaintiff possessed some capacity for physical activity indicating an ability to perform the physical functions of a sedentary or light work position in an occupation reasonably fitted to Plaintiff's education, training and experience. DG 0349- DG 0350, DG 0346, DG 0228, DG 0110, DG 0016.

Prudential had Greeley examined by doctors whose practice was related to the complaints suffered by Greeley and had record reviews performed as well. Prudential had Greeley examined by physicians on two occasions and had a psychiatric IME performed on one occasion. Drs. Pick and Donelson, independent physicians who examined Greeley, both opined that there was no condition that precluded Greeley from engaging in her activities as a manufacturing manager. DG 0110, DG 0116. Dr. Brachman, a physician who performed an independent records review, opined that Greeley's symptoms did not appear to cause an impairment that would prohibit Greeley from performing the essential functions of her sedentary occupation. DG 0228. Dr. Lipsitt, a psychiatrist who examined Greeley, opined that Greeley was strongly attached to her chronic pain and to her disability payments and had little motivation to pursue possible psychological stressors to help explain the onset of her symptoms. DG 0145. While Dr. Smith opined that there was substantial psychiatric disorder present, benefits for any psychiatric disability had already been exhausted due to the mental/nervous benefit limitation. DG 0130, DG 0322, Hannan Aff. ¶ 20. During the appeals process, Prudential had additional records reviews

performed and Dr. Moorehead noted that in addition to the lack of a physical examination to support the diagnosis of fibromyalgia and documentation to support an inability to perform the material and substantial duties of a sedentary or light work job, neither psychiatrist who examined Greeley opined that her somatoform disorder prevented Greeley from working.   DG 0340-0346. Clearly, Prudential possessed substantial evidence to support its initial decision to terminate benefits and its subsequent decisions to uphold its initial determination.

Thus, given the information available to Prudential in the record, the decision to discontinue Greeley's benefits was not only reasonable but was supported by substantial evidence.

CONCLUSION

Based on the following undisputed material facts, the Defendant requests that the Court issue an order granting its Motion for Summary Judgment.

Respectfully Submitted,

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,
By Its Attorneys,

/s/ Carey Bertrand
William T. Bogaert, BBO#546321
Carey L. Bertrand, BBO#650496
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

Dated: November 19, 2004

CERTIFICATE OF SERVICE

I, Carey L. Bertrand, hereby certify that a true copy of the foregoing *document* was served upon all counsel of record by forwarding a copy of the same, first class mail, postage prepaid on this 19th day

31086.1

of November 2004 to:

Jeffrey Dretler, Esq.
Prince, Lobel, Glovsky & Tye, LLP
585 Commercial Street
Boston, MA  02109

/s/ Carey Bertrand _____

31086.1