UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAWN M. GREELEY,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant | CIVIL ACTION NO.<br><br>04-10772 DPW |

**PLAINTIFF'S POST-HEARING BRIEF**

At the hearing of this matter on May 25, 2005, the Court requested the parties to brief the scope of review issues articulated by the United States Court of Appeals for the First Circuit in <u>Orndorf v. Paul Revere Life Insurance Company</u>, 404 F.3d 510; 2005 U.S. App. LEXIS 6344 (April 15, 2005). The Court also permitted the plaintiff to address the defendant's assertion which, as the plaintiff understands it, is that penalties pursuant to 29 U.S.C. 1132(c) are unavailable because the defendant is an insurer and not a "Plan" or a "Plan Administrator." This memorandum addresses both matters.

1.  <u>Orndorf Articulates the De Novo Standard of Review and Permits Discovery in this Case</u>

    The plaintiff construes <u>Orndorf</u>, <u>supra</u>, to stand for two propositions generally applicable to this case. Both appear to apply within the context of <u>de</u> <u>novo</u> review. First, the Court stated that:

    > "[t]he correct standard . . . is 'whether upon a full review of the administrative record, the decision of the administrator is correct.'" <u>Id.</u> at 18.

Second, the Court of Appeals related that:

> "Where the challenge is not to the merits of the decision to deny benefits, but to the procedure used to reach the decision, outside [of the administrative record] evidence may be of relevance. For example, evidence outside the administrative record might be relevant to a claim of personal bias by a plan administrator or of prejudicial procedural irregularity in the ERISA administrative review procedure [and] . . . to explain a key item . . . if that was omitted from the administrative record." Id. at *24.[1]

A.  Prudential's Decision was Incorrect

As the court is fully aware, Ms. Greeley asserts that the Administrator's decision in this case was incorrect. In its several determinative iterations, Prudential has relied upon the 1995 opinions of Drs. Donelson, Pick and Smith; the February 1996 opinion of Dr. Lipsitt; and the late 2000 records review of Dr. Brachman as well as its surveillance of the plaintiff. With those views comprising the foundation, Prudential concluded in its final administrative determination that there is "no evidence of a sickness or accidental injury that would prevent Ms. Greeley from engaging in any gainful occupation." PL 439.[2]

However, the fallacy of this conclusion is demonstrated by the reviews of various experts and treating professionals who have examined plaintiff and/or treated her for years:

> Lisa Gross: "chronic myofascial pain due to "high insensitivity and irritability of myofascial trigger points" (PL 190).

> Matilda Flores: "chronic pain and muscle spasms" (PL 019); "[b]ecause of her chronic pain and resulting decrease in her normal capabilities, there is no doubt that [Ms. Greeley] is incapable of performing the duties of any job." (PL 365).

> Jan Power LaGuardia: Plaintiff "receiving physical therapy one time per week for treatment of fibromyalgia" (PL 027); "myofascial restriction: (PL 091, PL 092).

> Dr. Bernard Yudowitz: Ms. Greeley "is not able to perform the substantial duties of any

---

[1] See also Wicklander v. Defined Benefit Pension, 2004 U.S. Dist. LEXIS 20607 (D. Or. 2004) ("The court may hear [evidence outside the administrative record] when it must determine whether the administrator's decision was affected by a conflict of interest").

[2] Prudential's decision to terminate benefits because of this conclusion is both incorrect and arbitrary and capricious because the proper standard governing Ms. Greeley's LTD claim is whether she had "any disorder of the body or mind" rendering her unable "to perform, for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience."

2

job for which she is easily fitted by her education, training or experience" (PL 309-310).

Emmanuel B. Green, Ph.D., CPE: Ms. Greeley is "totally occupationally disabled from performing any gainful work activity as a result of her experience of significant pain resulting from her current physical condition" (PL 379).

Moreover, the defendant's conclusions are undermined by their own experts. Doctors Pick and Donelson saw the plaintiff together. PL 08. Dr. Donelson opined that Ms. Greeley is "truly disabled." PL 188. Dr. Smith's only firm view was that Ms. Greeley's psychiatric conditions were secondary. PL 170. Dr. Lipsitt opined that Ms. Greeley definitely suffered from chronic pain syndrome (DG 491) and Dr. Brachman's record review consisted of the reports of Drs. Pick, Donelson, Smith and Lipsitt; she did not review Ms. Greeley's pre-1991 records (PL 14-15) and she relied upon Prudential's surveillance of the plaintiff, the videotapes of which Prudential either has not produced or show nothing other than someone (presumably Ms. Greeley) sitting on a sunfish for a brief period (PL 016). In short, the plaintiff submits that a careful reading of the record in this case demonstrates that the decision of the Administrator was incorrect. Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1006 (10th Cir. 2004) ("The district court must take a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case").

    B.    <u>Procedural Irregularities Renders Prudential's Decision Arbitrary, Capricious and Incorrect</u>

Moreover, as the Court is also fully cognizant, the plaintiff contends that the procedure utilized by Prudential in the course of its administrative proceedings was suspect, plagued with disclosure violations and evidenced bad faith determinations. On April 3, 2001, Prudential, in a letter from Jennifer Nichols, Team Manager, informed plaintiff's counsel that it had provided him with Ms. Greeley's "LTD claim file and the documentation that was used to render a determination on her claim." PL 06, DG 236. As the Court well knows, that representation was

3

untrue. Numerous documents which formed the administrative record prior to April 3, 2001 either never have been provided to the plaintiff or were not provided until August of 2004. See Plaintiff's Concise Statement of Material Facts in Support of its Motion for Summary Judgment and in Opposition to the Defendant's Motion for Summary Judgment on the Record, Appendix A, pp. 1-7. Moreover, many of Prudential's late disclosed materials appear to suggest bias (see communications from Marcia Scott, Prudential's Medical Director at DG 86 ("I'd like to use ron"), DG 91 (re Ms. Scott's communications with Drs. Pick and Donelson), and DG 92 (Ms. Scott suggesting language in letter to "Pick, et al")). See also DG 142 (letter to Dr. Lipsitt from Linda Gasowski giving Prudential's view of Ms. Greeley's condition); and DG 147 (letter from Dr. Lipsitt confirming his conversations with Dr. Scott).

While from the oral argument on May 25, it would appear that the Court disagrees with plaintiff's construction of certain statements in records Prudential withheld, Ms. Greeley respectfully contends that while Prudential blithely dismissed Ms. Greeley's assertion of fibromyalgia, those records suggest Prudential knew that fibromyalgia was her diagnosis. See DG 218, 499 (statements of Ms. Nichols, who, in addition to authoring Prudential's April 3, 2001 letter, issued the initial denial of Ms. Greeley's benefits) and DG 477 (statement of Christopher Cawley, Claim Manager). Even if Prudential only knew that Ms. Greeley claimed to be treating for fibromyalgia, as the Court suggested at the hearing, it is telling that Prudential never had Ms. Greeley examined by a doctor qualified to render a fibromyalgia diagnosis, but rather had her examined by orthopedic surgeons and a psychiatrist. Moreover, materials produced three and one half years after Prudential indicated it had provided Ms. Greeley's entire LTD file, show that Dr. Lipsitt found it difficult to make a positive psychological assessment of Ms. Greeley's condition (DG 462), that in 1997 (one to two years after Drs. Pick, Donelson, Smith and Lipsitt published their opinions) Prudential realized that "it was difficult to assess

4

employee psychiatrically . . ." (DG 464), and that "several consults have been done – none are conclusive . . .surveillance has never been done." (PL 465)[3]

This latter admission is particularly instructive in not only what it reveals (that as of 1997, Prudential's consultations could not lead it to refute that Ms. Greeley was disabled), but also by what followed. In other words, subsequent to 1997 and prior to the termination of Ms. Greeley's benefits in early 2001, the only substantive elements added to Prudential's administrative record were the report of Dr. Brachman and the surveillance for which Prudential contracted. However, Dr. Brachman's records review (PL 14) relied upon nothing more than the records which had been extant in 1997 and the surveillance revealed nothing to suggest that Ms. Greeley could work. Thus, neither Dr. Brachman's review nor the surveillance, by definition or content, added anything to the record which would support Prudential's decisions.

Furthermore, on March 24, 2003, Prudential offered Greeley one last chance to supplement the record before Prudential made its final determination. Greeley declined, content with the record upon which she believed Prudential would makes its decision. DG 504. Then, in November of 2003, Prudential sandbagged Greeley by obtaining new evidence which it added to the record without informing Greeley. Prudential then relied upon that evidence to justify its previously unsupportable position. Specifically, Prudential relied on a medical report from a Dr. Moorhead (hitherto unknown to Ms. Greeley) (DG 340-346). Dr. Moorhead's report was followed by a "Transferable Skills Analysis and Labor Market Survey" generated on December

---

[3] It bears mentioning, again, that Prudential bears the burden of proving that the mental benefit limitation applies to Ms. Greeley's claim. Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1007 n.4 (10th Cir. 2004) (citing and quoting Caffey v. UNUM Life Ins. Co., 302 F.3d 576, 580 (6th Cir. 2002) ("ERISA places the burden of proving an exclusion from coverage in an ERISA-regulated welfare plan on the plan administrator."); Frerking v. Blue Cross-Blue Shield of Kan., 760 F. Supp. 877, 881 (D. Kan. 1991) (noting that "it is also well-established that the burden is upon the insurer to demonstrate that the insured's claim falls within the terms of the exclusionary clause, and that such clauses are interpreted narrowly"); Cleary v. Knapp Shoes, Inc., 924 F. Supp. 309, 315 (D. Mass. 1996) (same)).

5

15, 2003 (DG 348-351), which Prudential also concealed from Greeley.[4]

The fact that Prudential's last decision relied upon documentation which Ms. Greeley was misled to believe did not exist and which was never disclosed to her before her administrative appeal concluded renders that decision procedurally flawed and, therefore, arbitrary and capricious. For all of these procedural and disclosure violations, Ms. Greeley should be awarded judgment in this case. Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir. 1984) (it is thus clear that violations of ERISA's procedural requirements -- reporting, disclosure and claims procedures -- may amount to arbitrary and capricious conduct . . . [i]n reviewing an administrator's decision, a court must consider continuing procedural violations in determining whether the decision to deny benefits in a particular case was arbitrary and capricious"); Malloy v. Ameritech, Civ. No. 98-488-GPM, 2000 U.S. Dist. LEXIS 20490, *26-33 (D. Ill. 2000) (finding review process unfair because administrator selectively used expert evidence to support its denial of benefits and, "[t]herefore, the Court finds that the Committee's decision is arbitrary and capricious"). See also Lemaire v. Hartford Life & Accident Ins. Co., 69 Fed. Appx. 88, 92 (3d Cir. 2003) (under arbitrary and capricious review a "court must look not only at whether the result is supported by reason, but also at the process by which the result was achieved"); Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir. 1995) (an arbitrary and capricious standard of review requires that the court evaluate *inter alia* "the impartiality of the decisionmaking body" and "the process afforded the parties"); Winchester v. Prudential Life Ins. Co., 975 F.2d 1479, 1483 (10th Cir. 1992) ("[i]ndicia of arbitrary and capricious conduct include lack of substantial evidence, mistake of law, bad faith, and conflict of interest"); Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 380 & n.4 (10th Cir. 1992) (In determining whether

---

[4] Moreover, it appears to date that Prudential continues to withhold records from Ms. Greeley's LTD file. The 1997 SUN video has already been mentioned. See PL 169. But photos of the video were made and have not been produced, see PL 192, and virtually no e-mails have been disclosed.

6

decision is arbitrary and capricious, court considers whether insurer conducted its review in bad faith or under a conflict of interest).

    C.        The Record Justifies Additional Discovery

Given the plaintiff's reading of <u>Orndorf</u>, should the Court disagree that, on the current record, Prudential's decision was neither arbitrary and capricious nor incorrect, then she respectfully requests the opportunity to depose via subpoenas <u>duces tecum</u> (seeking documents relating to Ms. Greeley's claim hitherto not produced) Marcia Scott, Jennifer Nichols, Christopher Cowley, Michelle Ignotis (apparent successor to Jennifer Nichols – see PL 317), Christine Latour (apparent successor to Ms. Ignotis – see PL 396) and Dan Dougherty (who issued Prudential's final administrative denial – see PL 439). See <u>Orndorf</u>, 404 F.3d 510, 2005 U.S. App. LEXIS 6344, at *24. Because discovery is necessitated by Prudential's actions, the plaintiff requests that the Court require Prudential to pay the costs of said discovery, including the cost of deposition transcripts and Ms. Greeley's reasonable attorneys' fees. In addition, Ms. Greeley should be afforded the opportunity to submit additional substantive evidence (should she choose to do so) to address the evidence relied on by Prudential which was never produced to Ms. Greeley during the administrative appeals (most specifically, the Transferrable Skills Analysis and Dr. Moorhead's report).[5] <u>Vanderklok v. Provident Life & Accident Ins. Co.</u>, 956 F.2d 610, 617 (6th Cir. 1992) (district court must "reconsider the issue of disability after plaintiff has been given the opportunity to submit additional evidence . . . [b]ecause defendant violated section 1133 of ERISA and plaintiff was denied a full and fair opportunity for review of Provident's decision").

2.        <u>Penalties are Available Pursuant to Damages Under 29 U.S.C. 1132(c)</u>

---

[5] From May 25 to date, Ms. Greeley has not had the time to retain one or more experts or to ascertain whether or not to submit other materials to rebut Prudential's assertions to rebut these late disclosures and in further support of her claims.

At the hearing, Prudential's counsel contended that Prudential is not subject to penalties under 29 U.S.C. § 1132(c) because (1) Prudential is not the "plan administrator", and (2) § 1132(c) applies only to the Administrator's failure to produce "plan documents", and not "claim documents".  These arguments fail for a number of reasons.

    A.    <u>Prudential is the Plan Administrator for Purposes of §1132(c)</u>

Prudential's first argument is completely without merit.  In its Answer, Prudential admitted that it was both "an Administrator and a Fiduciary of the Plan."  See Answer, ¶6.  Prudential's argument that, as the insurer, it is not the Administrator should, therefore, be disregarded.

Should the Court adopt Prudential's argument that it is not the actual "plan administrator" despite its Answer, the Court should consider Prudential a *de facto* administrator for purposes of liability under §1132(c).  Law v. Ernst & Young, 956 F.2d 364, 372-74 (1st Cir. 1992) ("If, to all appearances, Arthur Young acted as the plan administrator in respect to dissemination of information concerning plan benefits, it may properly be treated as such for purposes of the liability provided under § 1132(c)"); Hamilton v. Allen-Bradley Co., Inc., 244 F.3d 819, 824 (11th Cir. 2001) ("Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document . . . The key question on this issue is whether Allen had sufficient decisional control over the claim process that would qualify it as a plan administrator"); Rosen v. TRW, Inc., 979 F.2d 191, 193-94 (11th Cir. 1992) ("we hold that if a company is administrating the plan, then it can be held liable for ERISA violations, regardless of the provisions of the plan document").  Where an insurer administers a long-term disability policy and acts as the claim administrator, including gathering information about a claim, communicating with the insured, making coverage determinations and notifying

8

the insured of those decisions, the insurer is treated as an "administrator" for purposes of liability under 29 U.S.C. §1132(c). Cheal v. Life Ins. Co. of North America, 330 F. Supp. 2d 1347, 1357 (N.D.Ga. 2004) (denying insurer's motion to dismiss because plaintiff had alleged that the insurer "acted as a claim fiduciary, and administered his claim including providing him claim forms to complete, making a decision on his claim, and notifying him of [the] decision" to deny LTD benefits); DeLeon v. Bristol-Myers Squibb Co. Long Term Disability Plan, 203 F. Supp. 2d 1181, 1195 (D.Or. 2002) (citing Law and Rosen and penalizing insurer under § 1132(c) for insurer's improper withholding documents even though insurer was not named as the administrator). In this case, Prudential acted as the administrator with respect to Ms. Greeley's long-term disability claim and is therefore subject to liability under §1132(c). Id.

    B.    <u>Prudential is liable as plan administrator under 29 U.S.C. 1132(c) for Failing to Produce Plan Documents</u>

As plan administrator (either actual or *de facto*), Prudential is liable under 29 U.S.C. §§ 1132(C) and 1024(b)(4) for failing to provide plan documents upon Ms. Greeley's request. Cheal, 330 F. Supp. 2d at 1357; Bassiri v. Xerox Corp., 292 F. Supp. 2d 1212, 1222-1223 (D. Cal. 2003); DeLeon, 203 F. Supp. 2d at 1195; Teen Help, Inc. v. Operating Engineers Health and Welfare Trust Fund, 1999 U.S. Dist. LEXIS 21989, 6-12 (N.D.Ca. 1999). See also Rosen, 979 F.2d at 193-94; Kleinhans v. Lisle Savings Profit Sharing Trust, 810 F.2d 618 (7th Cir. 1987); Zanella v. Principal Mut. Life Ins. Co., 878 F. Supp. 144, 146-47 (E.D. Wis. 1995). Sections §§ 1132(C) and 1024(b)(4) required Prudential, as plan administrator, to respond within thirty days of Ms. Greeley's request for plan documents. On January 21, 2000, Ms. Greeley requested "all information regarding the appeal process as well as a copy of the Long Term Disability Policy that was in effect at the time I became disabled . . ." Prudential did not produce the three plan documents until August 11, 2004—1265 days after the request and not until Ms. Greeley sued

Prudential in this court. Accordingly, Prudential may be liable for penalties up to $110/day for 3795 document days—a total of $417,450.

    C.    Prudential is Liable under 29 U.S.C. § 1132(c)(1) for Failing to Provide Ms. Greeley's Entire Claim File

As to the remaining 91 documents Prudential wrongfully withheld from Ms. Greeley, Prudential apparently argues that 29 U.S.C. §1133 and implementing regulations (which require "the plan" to provide all pertinent documents) do not apply to Prudential's handling of Ms. Greeley's claim. As the argument appears to go, those provisions apply only to "the plan" and not to insurers or plan administrators. Prudential likely refers to cases from beyond the First Circuit to support it position. See Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 406 (7th Cir. 1996); Stuhlreyer v. Armco, Inc., 12 F.3d 75, 79 (6th Cir. 1993); Walter v. Internat'l Ass. of Machinists Pension Fund, 949 F.2d 310 (10th Cir. 1991); Groves v. Modified Retirement Plan, 803 F.2d 109, 116 (3d Cir. 1986).

In this jurisdiction, however, an administrator or insurer may be penalized under §1132(c) for failing to comply with §1133 and its implementing regulations. See Law, 956 F.2d at 372-74. Most notably, in Law, supra, the Court sensibly held that, for purposes of liability under §1132(c), the entity which *actually undertakes* the claims administration process is responsible for complying with relevant ERISA regulations, *even if the regulations do not, by their own terms, apply to that entity*. Thus, in Law, the Court of Appeals for the First Circuit held that the employer could be held liable under § 1132(c) where it undertook to administer the plaintiff's claim, even though the relevant ERISA provision applied only to the "plan administrator". Id. The First Circuit's reasoning reflects both common sense and "Congress's intent that employees have a remedy when they are denied timely information about their ERISA benefits." Id. at 373. As the Court stated:

> To hold that an entity not named as administrator in the plan documents may not be held liable under § 1132(c), even though it actually controls the dissemination of plan information, would cut off the remedy Congress intended to create. If a company ignored in practice any distinction between the administrator and itself, and assumed responsibility for responding to plan inquiries (as Arthur Young appears to have done here), both it and the purported plan administrator would be immune from liability. A § 1132(c) suit against the company would fail, because the company itself was not named administrator in the plan documents. Likewise, a suit against the plan administrator would fail, because employees would have had no reason to request information from the plan administrator if company personnel assumed responsibility for such requests. There being no request to the designated plan administrator, that entity could not be held liable for failure to respond properly.

Id. This reasoning applies with equal force to the facts of this case. It makes no difference that § 1133 and its regulations require only "the plan" to disclose pertinent documents; the entity which actually undertakes those responsibilities should be subject to § 1132(c)'s penalties if it fails to carry them out in the manner prescribed by ERISA. Id. Allowing Prudential to escape liability for clear violations of ERISA would undermine ERISA's disclosure requirements, eviscerate claimants' right to a "full and fair review" of their disability claims, and send the message to benefit plans and insurers that they can blithely ignore ERISA's disclosure requirements by merely delegating claims administration responsibilities to an insurer. This Court should not permit itself to be used as a vehicle for administrative abuse.

The facts of this case fit squarely within the First Circuit's holding in Law because Prudential held itself out exclusively as the furnisher of information and the administrator of Ms. Greeley's LTD claim. The Court of Appeals held that:

> The record contains nothing to show, throughout the entire eight month course of these contacts, that Law's request was ever forwarded to the [Plan Administrator] as such or that the people dealing with Law were acting on the [Plan Administrator's] behalf. Instead, persons presenting themselves solely as officials of Arthur Young, . . . responded, on Arthur Young stationery, to Law's inquiries and provided him with information. ***The district court was entitled to conclude from this evidence that Arthur Young itself was voluntarily assuming, and that it controlled, the information-providing function (at least) of the [Plan Administrator].*** We hold, therefore, that the court properly treated Arthur Young as the de facto plan administrator for purposes of Law's § 1132(c) claim.

Id. at 374 (emphasis added). Ms. Greeley never had any reason to direct requests for materials relevant to her claim to any entity other than Prudential. By its own actions, Prudential led Ms. Greeley to believe that she need look no further than Prudential for information regarding her claim; Prudential assumed and controlled the entire claims-handling process, including the administration of Ms. Greeley's appeals and the information-providing function. Prudential never, during the sixteen year history of Ms. Greeley's LTD claim, directed Ms. Greeley to any other entity for information regarding her claim or the plan. Indeed, when Ms. Greeley specifically requested information about the appeals process and her claim, Prudential sent to Ms. Greeley's counsel a copy of a letter it had sent to "Hewitt Associates" (apparently either the plan or the plan administrator), stating: "Should Ms. Greeley contact your office regarding an appeal, please direct her written request to our office."[6] PL012 (emphasis added). Likewise, in response to Ms. Greeley's request for the documents upon which Prudential relied, Prudential told Ms. Greeley that *it* had produced the "LTD claims file and the documentation that was used to render a determination on her claim." To this day, Ms. Greeley does not know the identity of the "plan" or how to contact the "plan". Indeed, the so-called "plan" is not identified or referenced even once in the entire administrative record.

    Thus, while 29 U.S.C. §1133 and 29 C.F.R. §§ 2560.503-1(g)(1)(ii)(2000), 2650.502-1(h)(2)(iii) and 2650.502-1 (m)(8) (2002) may specifically impose disclosure obligations on "the plan" during the claims process, Prudential is subject to liability under §1132(c) for failing to adhere to those obligations because it voluntarily stepped into the shoes of "the plan" for purposes of administering Ms. Greeley's LTD claim. E.g., Cheal, 330 F. Supp. 2d at 1357;

---

[6] If, in fact, Hewitt Associates is the plan or plan administrator, Prudential should be estopped from arguing that Ms. Greeley should have requested documents from it, because Prudential specifically told Ms. Greeley not to seek information from Hewitt Associates. Having unambiguously led Ms. Greeley to believe that Prudential was the entity in charge of deciding her LTD claim and providing her with the relevant materials, Prudential cannot now stand before this Court and point the finger at Ms. Greeley for failing to request documents from the entity from whom Prudential explicitly told Ms. Greeley to avoid.

DeLeon, 203 F. Supp. 2d at 1195; Teen Help, Inc., 1999 U.S. Dist. LEXIS 21989, at *6-12. Prudential should be punished for its bad faith conduct in ignoring Ms. Greeley's multiple requests for relevant documents and concealing hundreds of pages from her. Prudential should not be allowed to shirk its obligation to provide the plaintiff with a full and fair administrative hearing. To not penalize Prudential substantially would tell insurers and administrators that they can hide the ball for years without consequence. This Court should not countenance that message.

> D. Ms. Greeley has been Prejudiced By Prudential's Failure to Disclose

At the May 25 hearing, the Court inquired how Prudential's withholding of documents had prejudiced Ms. Greeley in the current proceedings before the Court. Upon further reflection, it appears that Ms. Greeley has been prejudiced in several ways. First, the *current* prejudice to Ms. Greeley is that the administrative record before the Court is skewed in Prudential's favor.[7] Most notably, at each level of appeal, Prudential withheld documents or presented new evidence to support its decisions and it denied Ms. Greeley a chance to confront the evidence upon which Prudential made its decision. Thus, Prudential's denial letters (including its final denial) bear a false appearance legitimacy—the result of a flawed process in which the decks were improperly stacked against Ms. Greeley.

Moreover, had Prudential revealed the entire claim file when it should have, Ms. Greeley would have been aware of the evidence of bias and improper claims handling practices now before the Court. See PSUMF ¶¶ 142-154. Ms. Greeley would have vigorously pursued that evidence in her appeals and would have further developed the record with respect to Prudential's

---

[7] Of course, Ms. Greeley maintains that she suffered prejudice throughout the entire appeals process in being denied a "full and fair review", including a fair opportunity to effectively evaluate Prudential's decisions, confront Prudential's evidence, and appeal its decisions. Instead, Prudential's improper behavior forced Ms. Greeley, a disabled claimant deprived of nearly $80,000 of yearly benefits, to incur the substantial expense and stress of four years of litigation just to reach a forum that will provide her with a fair and unbiased evaluation of her claim.

13

improper motivation and means in handling her claim.[8]  Ms. Greeley should not now be penalized for failing to pursue and investigate the evidence Prudential wrongfully concealed from her.  Yet, that is the position in which Ms. Greeley finds herself today—stuck with an administrative record containing documents and materials she was never able to confront and an undeveloped record with respect to Prudential's behind-the-scenes dealings with its "independent" physicians.  As the Court in DeLeon stated:

> "The Plan's internal review process may be the claimant's last genuine opportunity to influence the final decision, to supplement the record in preparation for judicial review, or to correct any errors in the existing record. Meaningful participation in this internal review process therefore requires that the claimant have an opportunity to review the relevant documents in the claim file so the claimant may submit any additional documents, correct any errors in the record, point to any favorable evidence that would tend to support the claim, fully understand the reasons for the decision that is being appealed, and to otherwise prepare an informed response to that decision."

203 F. Supp. 2d at 1193.

## Conclusion

The Court of Appeals' decision in Orndorf suggests that this Court should review the record as a whole and the plaintiff respectfully submits that such a review, especially given the burden placed upon Prudential in that regard, leads inexorably to the conclusion that judgment should enter for Ms. Greeley on the merits of her claim.  Judgment should also enter in her favor given Prudential's egregious misbehavior in its handling of her appeals.  Lastly, should the Court not view this matter on the merits as Ms. Greeley suggests or should it view Prudential's actions as excusable, or in some other way not calling for the entry of judgment on Ms. Greeley's behalf,

---

[8] As should be painfully evident from the Administrative Record, Counsel for Ms. Greeley took great pains to carefully document and create a record during the administrative appeals.  Had Prudential been forthcoming with documents, there can be no question that Counsel would have vigorously and zealously pursued all evidence of bias which is highlighted in Ms. Greeley's summary judgment papers.

14

Ms. Greeley submits that <u>Orndorf</u> suggests she should be able to conduct discovery and supplement the record before the Court.

                            Respectfully Submitted,

                            DAWN M. MS. GREELEY

                            By her Attorneys,

                            PRINCE, LOBEL, GLOVSKY & TYE LLP

By:   /s/ Richard D. Glovsky
       Richard D. Glovsky (BBO#: 195820)
       Joshua A. Lewin (BBO#: 658299)
       585 Commercial Street
       Boston, MA  02109
       (617) 456-8000

June 2, 2005