UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAWN M. GREELEY,<br><br>Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant | CIVIL ACTION NO.<br><br>04-10772 DPW |

**PLAINTIFF'S REPLY TO PRUDENTIAL'S SUPPLEMENTAL BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Dawn M. Greeley, submits this reply memorandum to address four issues raised in Prudential's Supplemental Brief; namely, Prudential's contentions that: (1) Ms. Greeley concedes that the Court should apply the arbitrary and capricious standard of review; (2) Orndorf precludes the Court from looking beyond the administrative record because there were no prejudicial procedural irregularities; (3) Ms. Greeley declined the opportunity to supplement the administrative record before the Court; and (4) Prudential is not liable for penalties under 29 U.S.C. § 1132(c) because Ms. Greeley should have known that Prudential was not the Plan Administrator.

1.  Ms. Greeley Does Not Concede the Standard of Review.

Prudential contends that Greeley "admit[s] that this Court must apply the deferential 'arbitrary and capricious' standard of review…" Ms. Greeley has not made such a concession. Indeed, in both of Ms. Greeley's previous submissions to this Court and at the hearing on May 28, 2005, Ms. Greeley argued that the *de novo* standard of review applies because there is

evidence of conflict of interest, bias and procedural irregularities.  See <u>Memorandum in Support of Plaintiff's Motion for Summary Judgment</u>, pp. 18-20 ("This Court's review of Prudential's decision under the arbitrary and capricious standard should be given "more bite"—if not reviewed *de novo*—because a genuine conflict of interest existed during Prudential's decisions making process . . . there is substantial evidence in the record of a genuine actual conflict of interest . . . Prudential did not act impartially and was improperly motivated to terminate Greeley's benefits . . . Prudential sabotaged what should have been objective and impartial evaluations").

2.  <u>Evidence Beyond the Administrative Record is Admissible to Prove That Prudential's Decision Was Procedurally Flawed and Made in Bad Faith</u>

Prudential's contention that the Court's review must be "confined to the administrative record before the Administrator" does not apply in this case because there is evidence of bias. The procedural irregularities in this case alone raise suspicions about Prudential's motivations. More importantly, however, the evidence of bias contained in Prudential's previously concealed documents raise troubling questions about the impartiality and "independence" of Prudential's "independent" consultants.  Indeed, a survey of Federal ERISA cases involving Prudential reveals that the cadre of experts Prudential employed to justify terminating Ms. Greeley's benefits includes former Prudential employees and "experts" Prudential frequently consulted and recycled.  Dr. Brachman, Prudential's key medical expert, surfaces in several cases in which she offered opinions revealingly similar to the one she presented here.  See <u>Roach v. Prudential Ins. Brokerage, Inc.</u>, 62 Fed. Appx. 294, 296-297 (10th Cir. 2003) (attached hereto as exhibit A); <u>Neumann v. Prudential Ins. Co. of Am.</u>, 2005 U.S. Dist. LEXIS 7455, 32-33 (D. Va. 2005) (attached hereto as exhibit B).  Not surprisingly, Marcia Scott, Prudential's Medical Director appears alongside Dr. Brachman in those cases.  See <u>Neumann</u>, 2005 U.S. Dist. LEXIS 7455, at *50-51.  Similarly, the "consulting physician" whose report Prudential relied on in its final denial

was subsequently revealed in papers submitted to this Court as a Dr. Moorhead. Looking at the "record", one might conclude that Dr. Moorhead was an independent physician at the Emory Clinic in Atlanta. See DG 337, 340-346. However, it turns out that Dr. Moorhead was actually a Medical Director at Prudential. <u>Mitchell v. Prudential Health Care Plan</u>, 2002 U.S. Dist. LEXIS 10567 (D. Del. 2002) ("Prudential also asked Dr. Joel Moorhead, a medical director at Prudential, to review the file") (attached hereto as exhibit C).

Furthermore, at least two sister Federal District Courts have discounted Dr. Brachman's, Dr. Scott's, and Dr. Moorhead's opinions as being incredible, unreliable and biased, and concluded that Prudential's reliance on their opinions amounted to "self-dealing":

- <u>Neumann</u>, 2005 U.S. Dist. LEXIS 7455:

    o **"There are other reasons to reject the opinions of** those experts that conclude that plaintiff is not totally disabled. Specifically, **Drs.** McBride and **Scott**, who reviewed plaintiff's file before recommending that she be denied benefits are both employed by Prudential . . . and thus operate under a conflict that might color their view of plaintiff's illness and the strength of the evidence presented to support its severity." <u>Id.</u> at *56-57 (emphasis added).

    o **"Dr. Brachman's opinion is also subject to doubt. . . Dr. Brachman's opinion is not persuasive** because she does not appear to believe that *any* patient with fibromyalgia can be totally disabled from sedentary work. Dr. Brachman discounts any possibility of a fibromyalgia sufferer having symptoms so severe that she is totally disabled from any sedentary work. Yet, Dr. Gavora persuasively refuted these sweeping conclusions. . . Indeed, the Fourth Circuit recently recognized that while many who suffer from fibromyalgia can carry on daily activities, some people have "such a severe case . . . as to be totally disabled from working. . .Plaintiff should not be denied benefits based on the opinion of a single expert that fibromyalgia sufferers cannot be totally disabled. **Thus, Dr. Brachman's opinion is not persuasive**. <u>Id.</u> at *57-58 (emphasis added).

    o **Drs**. Kumpf, McBride, **Scott, and Brachman**, all retained or employed by Prudential and none of whom examined plaintiff, conclude that plaintiff is not totally disabled from work. . . Drs. Kempf, McBride, **Scott, and Brachman, never examined or interviewed plaintiff, but merely reviewed her medical file. Thus, their opinions are not persuasive**. . . Notably, Prudential relied on the opinions of these file reviewers, two of whom were Prudential employees, to deny plaintiff's claims for benefits. <u>Id.</u> at *50-51(emphasis added).

3

- Mitchell, 2002 U.S. Dist. LEXIS 10567:

    o The court notes that unlike Mitchell's doctors, neither Dr. Anthony nor Dr. Moorhead treated or examined Mitchell - they merely reviewed her medical records. **Dr. Moorhead's conclusions regarding the reliability of Mitchell's Lyme Disease and back pain diagnoses are conclusory and completely unsupported by any testing or findings.** Id. at *26 (emphasis added).

    o The only doctor who challenged the MRI was **Dr. Moorhead** who stated that the back problems were consistent with age and should be asymptomatic. **Not only is Dr. Moorhead alone in this conclusion but given his ties to Prudential, his failure to examine the patient, and the lack of support for his conclusions, his analysis should not have been accorded such great weight**. Id. at *31 (emphasis added).

    o For instance, although Prudential relied on Dr. Moorhead's finding that the MRI showed only non-symptomatic, age related changes, **Prudential did not consider how Mitchell's subjective complaints of pain contradicted this conclusion. The court finds that this strong emphasis on objective evidence to the resulting exclusion of the subjective evidence was incorrect.** Id. at *30 (emphasis added).

    o Stronger **evidence of Prudential's "self-dealing"** is found in its treatment of Dr. Anthony's adverse conclusions. . . **This apparent willingness to use the helpful portions of Dr. Anthony's testimony while completely ignoring the portions that would support the continuance of benefits is some evidence that Prudential was acting in self-interest.** Id. at *27-28 (emphasis added).

If the Court is not fully satisfied on the current record that Prudential acted in bad faith and that its doctors were biased, Ms. Greeley would welcome the opportunity to further develop the record in this regard. Orndorf v. Paul Revere Life Insurance Company, 404 F.3d 510; 2005 U.S. App. LEXIS 6344 (April 15, 2005) ("evidence outside the administrative record might be relevant to a claim of personal bias by a plan administrator or of prejudicial procedural irregularity in the ERISA administrative review procedure").

3.  Ms. Greeley Never Had an Opportunity to Supplement the Record

Prudential contends that "Plaintiff was given an opportunity to directly address these reports [i.e., Dr. Moorhead's report and the "Transferable Skills Analysis/Labor Market Survey"]

4

in the instant litigation after production of the administrative record, [but] <u>did not take advantage of [that] opportunity</u>." Ms. Greeley is dumbfounded by Prudential's argument. First, Ms. Greeley was denied the opportunity to conduct discovery in this case (without prejudice to renew the motion). Second, Prudential states that Ms. Greeley should have "sought to include additional evidence" in the record before the Court. In the same breath, however, Prudential states that "This Court should review the record as it stood before Prudential" and that "judicial review is properly confined to the administrative record." Prudential's hypocritical argument lacks ment.

4. <u>Prudential Is Estopped From Arguing it Is Not The Plan Administrator</u>

Prudential states that it is not liable under 29 U.S.C. § 1132(c) because it is not the plan administrator.[1] In support thereof, Prudential relies on the affidavits of "Ewing" and "Hannan" which were not part of the administrative record.[2] Prudential further argues that Ms. Greeley should have known that Prudential was not the plan administrator because it was spelled out clearly in Ms. Greeley's LTD policy. Prudential's argument is disingenuous: Ms. Greeley could not possibly have known the identity of the plan or the plan administrator because <u>Prudential refused to produce the policy to Ms. Greeley despite her repeated requests.</u> Prudential cannot hide behind its own misconduct. Moreover, "Digital" (the company Prudential identifies in its papers as the contract holder) has not been in existence since October 1998. Saul Hansell, *Company Reports: Compaq's Earnings Slightly Top Forecasts*, N.Y. TIMES, October 15, 1998, at C6. Indeed, Digital merged with Compaq in 1998 and Compaq subsequently merged with Hewlett Packard in May of 2002. Id.; *It's Official: Hewlett-Compaq Merger Won*, N.Y. TIMES, May 2, 2002, at C4. Had Prudential directed Ms. Greeley to the correct plan or plan

---

[1] As discussed in Greeley's <u>Post Hearing Brief</u>, Prudential is liable under § 1132(c), even if it was not technically the "plan administrator."
[2] Greeley objects and moves to strike Prudential's reliance on these affidavits as they were not part of the administrative record.

5

administrator, Ms. Greeley would have gone there for the records constituting her LTD file. Instead, <u>Prudential told Ms. Greeley to direct all requests and communications to Prudential</u>. Prudential's arguments to this Court in this respect should be disregarded.

## **Conclusion**

The procedural irregularities and evidence of bias, prejudice and partiality in this case justify *de novo* review of Ms. Greeley's LTD claim, judgment in her favor and/or further discovery and the opportunity to supplement the record.  Prudential's abhorrent conduct during the claims process renders it subject to substantial penalties under ERISA and its arguments to the contrary are without merit.

        Respectfully Submitted,

        DAWN M. GREELEY

        By her Attorneys,

        PRINCE, LOBEL, GLOVSKY & TYE LLP

By:   /s/ Richard D. Glovsky
      Richard D. Glovsky (BBO#: 195820)
      Joshua A. Lewin (BBO#: 658299)
      585 Commercial Street
      Boston, MA  02109
      (617) 456-8000

June 6, 2005